OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The Criminal Procedure Law directs that, as to insanity acquittees found mentally ill but not dangerous, an order of conditions must be entered, which remains in effect for at least five years, preserving the court’s jurisdiction over defendant. This appeal calls upon us to determine the effect of a failure to follow the statutory procedure for entry of the order of conditions.
 

 I.
 

 On March 15, 1990, respondent was acquitted of burglary in the second degree, having been found not responsible by reason of mental disease or defect. The Criminal Procedure Law requires that such acquittees undergo a psychiatric examination, ordinarily to be completed within 30 days
 
 (see,
 
 CPL 330.20 [2]-[4]). The examiners’ findings and evaluations are then submitted to the convicting court for an initial hearing, to be conducted within 10 days of receipt of their reports, in order to assess the defendant’s current mental condition
 
 (see,
 
 CPL 330.20 [5]-[6]).
 

 County Court, after the initial hearing, determined that respondent was "currently suffering from a mental illness but
 
 *136
 
 is not dangerous as a result of that disorder” and entered a civil order of commitment on August 17, 1990. Pursuant to that order, respondent was committed to the custody of the Commissioner of Mental Health to be placed in a nonsecure facility "for care and treatment pursuant to the applicable provisions of the Mental Hygiene Law”
 
 (see,
 
 CPL 330.20 [6], [7]).
 

 That same day, respondent was admitted to the Capital District Psychiatric Center, and on February 12, 1991, she became a voluntary patient
 
 (see,
 
 Mental Hygiene Law § 9.23). The Office of Mental Health, with respondent’s participation, developed a written service plan for her release
 
 (see,
 
 Mental Hygiene Law § 29.15 [f]), which provided that she would reside at the Hearth Community Residence and attend specified treatment programs on a trial basis. On June 7 respondent received a discharge pass for that purpose, and on July 10, 1991 she was formally released
 
 (see,
 
 Mental Hygiene Law § 9.13 [b]).
 

 On June 21, 1991, shortly before respondent’s formal release, the Commissioner submitted to County Court a proposed order of conditions to remain in effect for five years from date of entry. Paralleling the service plan, the proposed order placed conditions on respondent’s residence, parental visits and alcohol consumption, required her to attend various counselling sessions and programs, and ordered periodic reports of her mental condition.
 

 On respondent’s behalf, the Mental Hygiene Legal Service moved to dismiss the Commissioner’s application on the sole ground that County Court lacked jurisdiction to entertain it, urging that Mental Hygiene Law § 29.15 provided for the conditional release of an involuntary patient only for the remainder of the authorized retention period, and of a voluntary patient only on consent. County Court rejected respondent’s argument and, on August 2, 1991 entered an order of conditions, effective for five years from the order of commitment. The Appellate Division, however, reversed and dismissed the Commissioner’s application, holding that an order of conditions may be entered no later than the expiration of a defendant’s period of involuntary commitment. We granted leave and now reverse, agreeing with County Court that, in the circumstances presented, entry of the order of conditions was permitted. No challenge is made to the appealability of County Court’s order
 
 (see,
 
 184 AD2d 121, 123-124), or to the
 
 *137
 
 substance of the order of conditions. Only the trial court’s jurisdiction to enter an order of conditions several months after an order of commitment is before us.
 

 II.
 

 The Insanity Defense Reform Act of 1980 (L 1980, ch 548) significantly changed the postverdict procedures for defendants acquitted by reason of mental disease or defect
 
 (see,
 
 1981 Report of NY Law Rev Commn, Appendix A, The Defense of Insanity in New York State, reprinted in 1981 McKinney’s Session Laws of NY, at 2251). The amendments were prompted by concern both that the convicting court lacked continuing supervision over the acquittee, and that once committed, acquittees are constitutionally entitled to essentially the same treatment as involuntary patients generally
 
 (see,
 
 1981 Report of NY Law Rev Commn, Appendix A, The Defense of Insanity in New York State, reprinted in 1981 McKinney’s Session Laws of NY, at 2261-2266; Stokman and Heiber,
 
 The Insanity Defense Reform Act in New York State, 1980-1983,
 
 7 Inti J L & Psychiatry 367, 368 [1984];
 
 see also, Matter ofTorsney,
 
 47 NY2d 667, 674-675).
 

 CPL 330.20 now distinguishes defendants found upon initial examination to have a dangerous mental disorder ("track 1” defendants), from those who are mentally ill but not dangerous ("track 2”), and those who are neither dangerous nor mentally ill ("track 3”)
 
 (see,
 
 CPL 330.20 [6], [7]). Track 1 defendants, because they are dangerous, remain confined in a secure facility subject to continued judicial supervision pursuant to CPL 330.20 until adjudicated no longer dangerous
 
 (see,
 
 CPL 330.20 [1] [f]; [6], [8];
 
 People v Stone,
 
 73 NY2d 296, 301; Stokman and Heiber,
 
 op. cit,
 
 at 382). Track 3 defendants, neither dangerous nor mentally ill, must be immediately released
 
 (see,
 
 CPL 330.20 [7]). Track 2 defendants are subject to involuntary civil commitment under the Mental Hygiene Law and an order of conditions under the CPL
 
 (see,
 
 CPL 330.20 [7]). Respondent, found mentally ill but not dangerous, is a track 2 defendant.
 

 As to track 2 defendants, CPL 330.20 (7) directs that, at the conclusion of the initial hearing, "the court must issue an order of conditions and an order committing the defendant to the custody of the commissioner.” An order of conditions— which is valid for five years and may be extended for good cause shown — is "an order directing a defendant to comply
 
 *138
 
 with this
 
 [sic]
 
 prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without authorization” (CPL 330.20 [1] [o]).
 
 [1]
 

 The statute contemplates that an order of conditions and an order of commitment will be issued simultaneously, at the conclusion of the initial hearing, though an order of conditions has a prescribed five-year term and an order of commitment has no specified term. This reading of the statute is buttressed by the two separate forms implementing the statute
 
 (see,
 
 22 NYCRR subtit D, ch II, Form F [civil order of commitment refers to order of conditions "issued herewith”]; 22 NYCRR subtit D, ch II, Form N [order of conditions refers to civil order of commitment "issued on this date”]). Indeed, in the case before us, County Court commenced the five-year life of respondent’s order of conditions on August 17, 1990, which was the date of the order of commitment.
 

 County Court having failed to enter an order of conditions, in writing or orally, at the time of the order of commitment, we must now decide whether the court could enter an order of conditions more than a year later, after respondent had become a voluntary patient. We conclude, in the circumstances presented, that it can.
 

 The order of conditions allows courts to maintain a supervisory role over particular discharged criminal acquittees
 
 (Stone,
 
 73 NY2d, at 300). At any time during the pendency of an order of conditions, the Commissioner may apply, on evidence that the defendant currently has a dangerous mental disorder, for an order recommitting the defendant pursuant to track 1
 
 (see,
 
 CPL 330.20 [14]). Thus, in
 
 Stone,
 
 we held that a track 3 defendant, initially found not mentally ill and immediately released, remained subject to the court’s jurisdiction under the CPL for subsequent track 1 commitment so long as an order of conditions was in effect.
 

 From this we conclude that the order of conditions is the vehicle by which the convicting court effectuates its continuing supervisory authority over the acquittee. Central to our conclusion is the statutory provision that the court
 
 must
 
 issue
 
 *139
 
 an order of conditions, thereby requiring the court to retain supervisory authority over all track 2 defendants, whether or not in the custody of the Commissioner
 
 (see,
 
 CPL 330.20 [7]). There is no discretion in this respect. In light of this directive, we cannot deem failure to seek entry of an order of conditions at the moment of commitment fatal to the court’s continuing authority to enter an order of conditions during the mandated term of the order.
 
 [2]
 
 3****Where, as here, no prejudice is claimed from postcommitment entry of an order of conditions — defendant was not charged, for example, with violation of an order of conditions without prior notice — the court had authority to enter the order nunc pro tune
 
 (see, Matter of Zamichow,
 
 176 AD2d 807, 808).
 

 Respondent tenders two arguments for dismissal of the order of conditions, both based on the language of CPL 330.20 (7) that "further retention, conditional release or discharge” of a track 2 defendant must be in accordance with the Mental Hygiene Law. She contends first, that County Court’s authority to subject her to an order of conditions expired not later than the end of her involuntary commitment and second, that the order would in any event terminate upon her release. Neither argument has merit.
 

 An order of conditions is not subject to the Mental Hygiene Law, and was clearly intended to exist independent of the civil order of commitment authorizing confinement
 
 (see,
 
 CPL 330.20 [7]; Halpern, Rachlin and Portnow,
 
 New York’s Insanity Defense Reform Act of 1980: A Forensic Psychiatric Perspective,
 
 45 Alb L Rev 661, 669 [1981]). A defendant’s release from commitment thus has no bearing on the order of conditions. Indeed, CPL 330.20 (1) (o) and CPL 330.20 (7) speak of orders of conditions whether or not the defendant is in the custody of the Commissioner pursuant to the Mental Hygiene Law.
 
 [3]
 

 
 *140
 
 Under the Mental Hygiene Law, "conditional release” is defined as "release subject to the right of the [facility] to return the patient to in-patient care” (Mental Hygiene Law § 1.03 [30]). County Court did not, by virtue of entry of the order of conditions, subject respondent to "conditional release.” We note, in addition, that the period of involuntary commitment for a track
 
 2
 
 defendant may be as brief as 72 hours
 
 (see,
 
 Mental Hygiene Law § 9.13 [b];
 
 see also, Matter of Gene DD.,
 
 193 AD2d 147, 150). Respondent’s interpretation would render the statutory provisions for a mandatory five-year order of conditions essentially meaningless. Respondent’s remaining contentions are either unpreserved or without merit.
 

 Accordingly, the Appellate Division order should be reversed, without costs, and the County Court order reinstated.
 

 Judges Simons, Bellacosa, Smith and Ciparick concur; Judges Titone and Levine taking no part.
 

 Order reversed, etc.
 

 [1]
 

 . The order of commitment in this case, specifying that respondent was not to leave the facility without authorization, could of course also have itself constituted the substance of an order of conditions. However, it was not so labeled, and it did not recite that it was made pursuant to the CPL.
 

 [2]
 

 . The legal issue of jurisdiction to enter an order of conditions under the Criminal Procedure Law plainly hinges on whether or not it must be entered at the time of the order of commitment. The fact that respondent thereafter remained in the facility involuntarily would not give rise to jurisdiction to enter an order of conditions, in that her commitment was pursuant to civil order, under the Mental Hygiene Law.
 

 [3]
 

 . Reliance on
 
 People v Flockhart
 
 (96 AD2d 843, 844) in this regard is misplaced. That case did not address the court’s jurisdiction to enter an order of conditions — indeed, the order of conditions and order of commitment in that case were issued simultaneously
 
 (see,
 
 96 AD2d, at 843). Rather, the court there invalidated certain conditions that subjected the track 2
 
 *140
 
 defendant to a degree of judicial supervision warranted only as to track 1 defendants, and held that any such conditions imposed on remand "shall be effective only if defendant is involuntarily committed to the custody of the commissioner” pursuant to track 1 (96 AD2d, at 845;
 
 see also,
 
 Annotation,
 
 Validity of Conditions Imposed When Releasing Person Committed to Institution as Consequence of Acquittal of Crime on Ground of Insanity,
 
 2 ALR4th 934).