OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This case presents a straightforward question of statutory interpretation: do the provisions of CPL 330.20 authorize an order extending the conditions placed on an insanity acquit-tee’s release from a psychiatric facility for a period greater than 10 years? We conclude that CPL 330.20 authorizes such an extension, and therefore reinstate the three-year extension ordered by the trial court.
 

 In 1966, while on a weekend pass from Creedmoor Psychiatric Center, a secure psychiatric facility in Queens Village, de
 
 *101
 
 fendant Oswald N. — a paranoid schizophrenic — strangled his wife of two months because her “face turned into a devil.” Having achieved the capacity to understand the proceedings against him (CPL 730.10), defendant was ultimately found to be not responsible by reason of a mental disease or defect for the crime of second degree murder. In posttrial proceedings resulting from his insanity acquittal, the court determined that defendant constituted a physical danger to himself or others and in March 1976 remanded him to the custody of the Commissioner of Mental Health for recommitment to Creed-moor for five years
 
 (see,
 
 CPL 330.20 [6]; 330.20 [1] [c]).
 

 At the end of the five-year commitment period and upon a finding that he no longer suffered from a dangerous mental disorder, defendant was conditionally released from hospitalization in 1981
 
 (see,
 
 CPL 330.20 [12]). Defendant’s release, however, was expressly made subject to an order requiring him to make regular visits to a psychiatric clinic every two weeks where he would receive injections of prolixin to reduce the frequency of his delusions. "With defendant’s consent, the original order of conditions was extended twice, first on February 10, 1988, and then on May 22, 1989.
 

 In 1990, when the Commissioner sought to extend the order of conditions for a third time, defendant objected on the ground that the court lacked jurisdiction to extend an order of conditions beyond 10 years. Supreme Court rejected this argument, interpreting the language of CPL 330.20 (1) to permit the extension. At an evidentiary hearing held to determine whether good cause had been shown for the proposed extension, the court heard the testimony of two experts, defendant’s treating psychiatrist and a second forensic psychiatrist, both of whom concurred in defendant’s continued diagnosis as a paranoid schizophrenic and agreed that defendant’s auditory hallucinations persisted, though controlled somewhat by medication, with one psychiatrist characterizing his prognosis as “guarded.” The two psychiatrists further opined that the order of conditions should be extended to insure that defendant continue to report for his biweekly injections of prolixin and thus avoid the danger posed by a relapse of the violent behavior brought on by his previously more severe delusional symptoms.
 

 Based on the experts’ ”strong[ ]” recommendations, on June 7, 1993, the court extended the order of conditions another three years, concluding that ”[w]hile [defendant] may be willing to take his medication * * * and undergo treatment voluntarily, it is, in his best interests, as well as in the interests of
 
 *102
 
 public safety and welfare, that an order of conditions be continued.”
 

 The Appellate Division reversed and denied the extension, reasoning that the court’s supervisory capacity over defendant was limited to 10 years. Two Justices dissented in a comprehensive opinion by Justice Miller. We now reverse.
 

 Under CPL 330.20, the statute which establishes the procedure in criminal cases for the commitment of insanity acquit-tees, once a defendant found after verdict or plea to be either mentally ill (a "track two” defendant) or mentally ill and dangerous (a "track one” defendant) no longer requires the inpatient services of a psychiatric center or no longer suffers from a dangerous mental disorder, the law mandates that the defendant be either conditionally released (CPL 330.20 [12]; Mental Hygiene Law § 29.15) or transferred to a nonsecure facility (CPL 330.20 [11]). As a "track one” insanity acquittee (see,
 
 Matter of George L.,
 
 85 NY2d 295), defendant was released in 1981 upon a finding that continued confinement in a psychiatric facility was no longer essential for his long-term treatment and care.
 

 Whenever a court issues either a release order or a transfer order, however, it must also issue an order of conditions. The order of conditions, incorporating a prescribed treatment plan prepared by psychiatrists familiar with the defendant’s history, "shall contain any conditions that the court determines to be reasonably necessary or appropriate” (CPL 330.20 [12]). These conditions may include required periodic visits to a specified outpatient facility
 
 (see, People v Stone,
 
 73 NY2d 296, 299), restrictions on a defendant’s alcohol consumption or place of residence
 
 (see, Matter of Jill ZZ.,
 
 83 NY2d 133, 136), or, if the defendant has been transferred to a nonsecure facility, the requirement that defendant not leave the premises without written authorization. Should a defendant fail to comply with the treatment plan specified in the order of conditions and thereafter become dangerous to himself or others, the courts may, upon a hearing, recommit the defendant to a secure psychiatric hospital.
 

 At issue on this appeal is the arguably ambiguous language in the statute providing that an order of conditions "shall be valid for five years from the date of its issuance, except that, for good cause shown, the court may extend the period for an additional five years” (CPL 330.20 [1]
 
 [o]).
 
 Defendant argues that by using the word "an” the Legislature intended that there be only one five-year extension of an order of conditions
 
 *103
 
 subsequent to the initial order, so that, together, a defendant can only be subject to an order of conditions for a maximum of 10 years. In other words, under defendant’s interpretation, the word "an” really means "one” extension of five years and because the defendant has been subject to an order of conditions since his release from Creedmoor in 1981, the latest five-year extension ordered by the court in 1991 was impermissible.
 

 Neither the language nor the policy of CPL 330.20, however, supports such an absolute limitation.
 

 First and most importantly, there is nothing in the language of CPL 330.20 that affirmatively limits courts to only two consecutive five-year orders of conditions. As noted by the Appellate Division dissenters, had the Legislature intended such a limitation, "it could easily have so provided” (208 AD2d, at 739). In contrast to the analogous provisions in CPL 330.20 governing the length of retention and furlough orders, the statute does not specify that an order of conditions shall be valid for a period "not to exceed ten years” or that the order may be extended only for "one additional period not to exceed five years” (compare, CPL 330.20 [1] [g] ["for a period not to exceed one year”]; CPL 330.20 [1] [h] ["not to exceed two years”]; CPL 330.20 [1] [k] ["not exceeding fourteen days”]). Rather, the language and structure of the statute indicate that the five-year period specified was likely intended to insure that regular monitoring of a defendant’s condition occur at least at five-year intervals, thus restricting the length, not the number of extensions.
 
 [1]
 

 Further supporting our reading of the statute is the fact that issuance of an order of conditions is not limited to situations like the one here, where the defendant has been released from confinement altogether. Rather, the statute also requires courts to issue an order of conditions in connection with the transfer of a defendant from a secure to a nonsecure psychiatric facility, thus conditioning the transfer upon the defendant’s agreement not to attempt an escape (CPL 330.20 [11]). In light of the fact that mentally ill insanity acquittees can be committed to
 
 *104
 
 such nonsecure facilities until such time as they no longer require inpatient care and treatment
 
 (see,
 
 CPL 330.20 [1] [d] [defining term "mentally ill”];
 
 Jones v United States,
 
 463 US 354, 368), we cannot assume that the Legislature intended the order of conditions to be limited only to the first 10 years of confinement.
 

 The postacquittal procedures now codified in CPL 330.20 and initially enacted into law as part of the Insanity Defense Reform Act of 1980 (L 1980, ch 548) were intended to protect the public from persons found not responsible of a crime by reason of mental disease or defect while providing effective treatment for such individuals
 
 (People v Stone,
 
 73 NY2d 296, 303,
 
 supra).
 
 An order of conditions, in particular, is "the vehicle by which the convicting court effectuates its continuing supervisory authority over the acquittee”
 
 (Matter of Jill ZZ.,
 
 83 NY2d 133, 138,
 
 supra).
 
 However, a once dangerously mentally ill insanity acquittee can only be recommitted under CPL 330.20 — should the defendant again become dangerous — if an order of conditions is still in place
 
 (see, People v Stone,
 
 73 NY2d, at 303).
 

 Given the above, the Legislature "could not rationally have intended to subject the public to the enormous risk that would be created by abandonment of all supervision of the acquittee whose potential violent conduct is controllable only when medicated” (208 AD2d, at 741). As the Law Revision Commission which proposed the legislation largely incorporated in CPL 330.20 recognized, since
 

 "psychiatry cannot now guarantee the safety of the public from future dangerous acts of persons found not responsible * * * and will most likely be unable to do so in the foreseeable future, the procedures governing commitment, treatment, and release of such defendants are critically important. * * * [T]he mental condition of the defendant when released into the community — is the basis of public and professional concern” (1981 Report of NY Law Rev Commn, 1981 McKinney’s Session Laws of NY, at 2261).
 

 Significantly, the Law Revision Commission Report, while carefully delineating the functioning of the proposed legislative scheme, never refers to the period of release subject to an order of conditions as limited to 10 years.
 

 Defendant’s argument that the Legislature must have intended a 10-year limit because otherwise the statute would
 
 *105
 
 permit an order of conditions to go on indefinitely, subject to unlimited extensions, is belied by the provisions of CPL 330.20 which permit the Commissioner to apply for a discharge order terminating a defendant’s order of conditions and releasing the defendant unconditionally
 
 (see,
 
 CPL 330.20 [1] [n]; [13]). Such discharge orders are authorized for defendants who are no longer mentally ill or dangerous and who have been receiving care on an outpatient basis for a minimum of three years (CPL 330.20 [13]). A court may not issue a discharge order, however, unless it finds that it is "consistent with the public safety and welfare of the community and the defendant”
 
 (id.).
 
 Maintaining ongoing judicial supervision over an acquittee’s treatment pursuant to an order of conditions for a period greater than 10 years promotes both these goals in that it fosters public safety as well as provides for effective treatment of the acquittee.
 

 Finally, defendant’s arguments that his constitutional rights would be violated by an extension of the order of conditions beyond 1991 are without merit. As for the purported equal protection concerns, it is "widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from * * * candidates for [civil] commitment”
 
 (Jones v United States,
 
 463 US 354, 370,
 
 supra).
 

 [2]
 

 Defendant’s due process challenge can also be rejected. An order of conditions like the one at issue here merely requiring an individual to receive psychiatric care twice a month on an outpatient basis is far less restrictive of that individual’s liberty than actual commitment in a psychiatric hospital. Yet the Constitution does not forbid an insanity acquittee from being committed (as opposed to merely conditionally released) for a period longer than that for which he might have been incarcerated if convicted
 
 (id.,
 
 at 368-370).
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the order of Supreme Court,
 
 *106
 
 Queens County, reinstated. In that the Appellate Division order is final, an answer to the certified question is unnecessary.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . That the Commissioner of Mental Health submitted a bill to the Legislature in 1993 to "clarify” the ambiguity in CPL 330.20 (1)
 
 (o)
 
 and thus affirmatively state that orders of conditions can be extended for additional
 
 periods (see,
 
 Mem of Office of Mental Health in Support of Assembly Bill 6437, OMH No. 10R-93, at 2) does not materially alter our analysis. As we have explained in other contexts, "[(legislative inaction, because of its inherent ambiguity, affords the most dubious foundation for drawing positive inferences”
 
 (Clark v Cuomo,
 
 66 NY2d 185, 190-191 [citations omitted]).
 

 [2]
 

 . [3] To the extent that the prevailing view was once that no "constitutional justifications exist for significant distinctions between” persons civilly committed under the Mental Hygiene Law and insanity acquittees committed under the Criminal Procedure Law (1981 Report of NY Law Rev Commn, 1981 McKinney’s Session Laws of NY, at 2262;
 
 see also, Matter of Torsney,
 
 47 NY2d 667, 676;
 
 Matter of Jill ZZ.,
 
 83 NY2d 133, 137,
 
 supra),
 
 such a requirement is no longer an accurate statement of the law (see,
 
 e.g., People v Escobar,
 
 61 NY2d 431, 441).