[740 NYS2d 335]

In the Matter of JAMES L. STONE, Appellant. RAMON M., Respondent. ROBERT T. JOHNSON, Appellant.

In the Matter of JAMES L. STONE, Appellant. ANGELO G., Respondent. ROBERT T. JOHNSON, Appellant.

First Department, April 25, 2002

APPEARANCES OF COUNSEL

*Jonathan D. Birenbaum* of counsel (*Marion R. Buchbinder* on the brief; *Eliot Spitzer, Attorney General,* attorney), for appellant.

*Stephen J. Harkavy* of counsel (*Karen G. Andreasian* on the brief; *Marvin Bernstein, Director, Mental Hygiene Legal Service,* attorney), for respondents.

*Jonathan Zucker* of counsel (*Raffaelina Gianfrancesco* on the brief; *Robert T. Johnson, District Attorney,* Bronx County, attorney), for appellant.

## OPINION OF THE COURT

MAZZARELLI, J.

These consolidated appeals require us to examine certain provisions of the Insanity Defense Reform Act of 1980 (L 1980, ch 548, codified in part at CPL 330.20). Specifically, we must determine whether the Legislature intended that, after the expiration date of an order of conditions, supervision by the State Office of Mental Health (OMH) over an insanity acquittee is automatically terminated, or, whether a hearing is required to determine if the acquittee meets the criteria for discharge set forth in CPL 330.20 (13). In both of these cases, the IAS court determined that it lacked jurisdiction and discharged the acquittees without any inquiry as to their mental condition or need for further supervision.

### RAMON M.

Defendant Ramon M., a chronic paranoid schizophrenic, set a fire in his mother's apartment in 1985 while his four-year-old nephew was alone with him. He claimed he set the fire because he was angry with his mother, with whom he has a difficult and intense relationship. On September 2, 1986, he was found not responsible by reason of mental disease or defect of arson in the second degree and reckless endangerment of a child, and was admitted to the Bronx Psychiatric Center (BPC) pursuant to CPL 330.20 (6).

Bronx County Supreme Court conditionally released Ramon M. from the hospital as an outpatient on July 21, 1993, subject to a five-year order of conditions (CPL 330.20 [12]). In October 1996, Ramon M. was re-admitted to BPC on a court order of

retention, because he had handed a counselor a note stating that he would destroy the United States and because he was experiencing hallucinations during which he was instructed to commit suicide. He was subsequently released to a structured community residence. On May 22, 1998, the court extended his order of conditions to July 21, 2000. Between July 1999 and July 2000, Ramon M. repeatedly asked for his medication to be lowered and required three separate inpatient hospitalizations. As of July 2000, his medication regime included Thorazine, Depakote, and Cogentin, and his doctors recommended extension of his existing level of care for two more years.

On September 14, 2000, almost two months after his order of conditions had expired, an application for its extension was filed. The Commissioner of OMH explained that the delay was due to an error in the computer tracking system, which listed the expiration date of Ramon M.'s current order of conditions as July 21, *2001*. OMH stated that the application was immediately filed when the error was discovered, and it included an affidavit from Ramon M.'s examining physician. The doctor stated that Ramon M. lacked awareness of the symptoms which necessitated his hospitalization and might be even less aware of his symptoms if he decompensated, that Ramon M. frequently needed to be reminded of his appointments with therapists, and that he needed to be closely monitored as he moved to a less structured living situation.

Mental Hygiene Legal Services (MHLS) moved to dismiss the application to extend the order of conditions, arguing that there was no jurisdiction. The IAS court granted MHLS's motion, holding that all extensions for an order of conditions "must be made within the time period in which such order remains in effect, and not after it has expired." The Commissioner appealed.

## Angelo G.

Defendant Angelo G. is also a chronic paranoid schizophrenic. He sexually assaulted his half-sister, and was found not responsible by reason of mental disease or defect of that crime in the Supreme Court, Bronx County, on July 7, 1986. Previously, Angelo G. had been arrested at least 18 times and had served a one-year prison term for attempted murder after attacking a stranger on the street with a hatchet. He was admitted to Mid-Hudson Psychiatric Center (MHPC) on July 21, 1986. While at MHPC, he told the staff that Russians and Cubans were after him and that he assaulted his sister so he

could contact the FBI and CIA to advise them about a conspiracy. In April 1988, he was transferred to BPC, where he was cooperative, although he sometimes became aggressive toward women and his peers. He showed little insight and denied having psychiatric problems. He was released from BPC in March 1994 under an order of conditions and assigned to a supported, supervised apartment. At this time, his medication and treatment recommendations included Haldol Decanoate, random drug tests, weekly individual psychotherapy sessions, and group sessions emphasizing interpersonal relationship issues. Between 1999 and 2000, Angelo G. refused his injections of Haldol Decanoate for two consecutive months. His treating physicians noted that while he did not decompensate, his behavior became noticeably argumentative. Angelo G. told his psychiatrist that he would discontinue his medications when his order of conditions expired. Angelo G.'s order of conditions expired on October 14, 2000.

On November 2, 2000, OMH Bureau of Forensic Services applied for an extension of Angelo G.'s order of conditions. His psychiatrist stated that Angelo G. was ambivalent about taking his medication, that his condition had previously deteriorated when he stopped his medications, and that he denied the severity of his criminal acts. The IAS court denied the application as untimely, because it was not filed 30 days prior to the expiration date of the existing order of conditions. The Commissioner appealed.

DISCUSSION

The Insanity Defense Reform Act (CPL 330.20) was enacted in 1980, "to protect the public from persons found not responsible of a crime by reason of mental disease or defect while providing effective treatment for such individuals." (*Matter of Oswald N.*, 87 NY2d 98, 104.) Its provisions outline the procedures for the commitment, retention, discharge and release of insanity acquittees, upon review of the nature and degree of their mental illness. The act requires that if a court finds an individual not responsible by reason of mental illness or defect, the acquittee must be committed to the custody of the OMH for an evaluation to determine whether he or she is suffering from a dangerous mental disorder or mental illness (CPL 330.20 [2]). Three post-acquittal tracks are provided (CPL 330.20 [7], [8], [9], [11], [12]). Track one: patients determined by the initial commitment hearing court to suffer from a dangerous mental disorder are committed to a secure psychiat-

ric hospital. Track two: patients who do not have a dangerous mental disorder but are mentally ill are civilly committed pursuant to article 9 of the Mental Hygiene Law to a nonsecure hospital designated by the Commissioner. And, track three: patients who are not mentally ill are released either with or without an order of conditions.

A judicial determination that a patient does not suffer from a dangerous mental disorder is required before a patient can be transferred to a nonsecure hospital, and a finding that the patient is no longer mentally ill is required before release to the community. All transfers and releases require the issuance of orders of conditions (CPL 330.20 [11], [12]). Pursuant to CPL 330.20 (1) (o), an order of conditions is defined as

> "an order directing a defendant to comply with this prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the Commissioner, not to leave the facility without authorization. The order shall be valid for five years from the date of its issuance, except that, for good cause shown, the court may extend the period for an additional five years."

A court may also discharge an insanity acquittee pursuant to a discharge order which terminates an order of conditions or unconditionally discharges that person from supervision (CPL 330.20 [1] [n]; [13]). However, such an unconditional discharge order may only be issued after the judge finds that the defendant no longer suffers from a dangerous mental disorder and is no longer mentally ill, and that the issuance of a discharge order "is consistent with the public safety and welfare of the community and the [insanity acquittee]." (CPL 330.20 [13].)

The need for protection and treatment of insanity acquittees was acknowledged by the Supreme Court in *Jones v United States* (463 US 354, 366) when it stated that "[i]t comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment." Continued court supervision is necessary and in New York, the order of conditions is "the vehicle by which the convicting court effectuates its continuing supervisory authority over the acquittee." (*Matter of Jill ZZ.*, 83 NY2d 133, 138.) Our statute also provides that the District Attorney's office maintains post-acquittal supervision of insanity acquittees subject to the order of conditions (*see*, CPL 330.20 [13], [14]; *People v Stone*, 73 NY2d 296, 300-301).

The purpose of CPL 330.20 is to further the important policy of structuring post-conviction supervision for individuals acquitted by reason of mental disease or defect. Consistent with the purpose of the legislation, CPL 330.20 (1) (o) and (13), when read together, require that a court conduct a hearing to determine whether there is "good cause" to extend an order of conditions under CPL 330.20 (1) (o) or whether an insanity acquittee meets the criteria for discharge pursuant to CPL 330.20 (13). To simply dismiss the petition as untimely on jurisdictional grounds is improper. By denying petitions as jurisdictionally defective, a motion court would divest OMH and the District Attorney of supervisory authority and permit insanity acquittees to be released into the community without any determination as to whether or not they are a danger to themselves or the public.

Soon after the enactment of the Insanity Defense Reform Act, the Court of Appeals addressed a petition for habeas corpus brought by an insanity acquittee who had been placed in an inpatient psychiatric center, but had not been granted a hearing to determine whether he was suffering from a dangerous mental disorder, as required by CPL 330.20 (8) (*People ex rel. Thorpe v Von Holden*, 63 NY2d 546, 555). While the Court of Appeals recognized the importance of requiring the Commissioner to adhere to statutory time limits, it nonetheless issued an order which directed only a conditional release of the petitioner "unless a hearing has been begun * * * within 10 days after service upon the Commissioner with notice of entry of the order entered by the County Court on [the] court's remittitur and is continued on successive court days without substantial interruption until concluded" (*id.* at 556). Thus, as in *Thorpe*, the failure to hold a hearing before the expiration of petitioners' orders of conditions does not divest a court of the responsibility to determine whether an insanity acquittee meets the requirements for discharge under CPL 330.20 (13) before allowing unsupervised release into the community.

*Matter of Oswald N. (supra)* also instructs our holding. In that case, the Court of Appeals was presented with the question of whether CPL 330.20 authorized an order "extending the conditions placed on an insanity acquittee's release from a psychiatric facility for a period greater than 10 years." (87 NY2d at 100.) CPL 330.20 (1) (o) states that an order of conditions "shall be valid for five years from the date of its issuance, except that, for good cause shown, the court may extend the period for *an* additional five years" (emphasis supplied). Rely-

ing upon the language of the statute and the policy supporting orders of conditions, the Court of Appeals interpreted the section expansively, to allow more than 10 years of supervision. It emphasized the importance of the absence of any time limiting language in the statute, stating,

> "there is nothing in the language of CPL 330.20 that affirmatively limits courts to only two consecutive five-year orders of conditions. * * * [H]ad the Legislature intended such a limitation, 'it could easily have so provided' [citation omitted]. In contrast to the analogous provisions in CPL 330.20 governing the length of retention and furlough orders, the statute does not specify that an order of conditions shall be valid for a period 'not to exceed ten years' or that the order may be extended only for 'one additional period not to exceed five years' (*compare*, CPL 330.20 [1] [g] ['for a period not to exceed one year']; CPL 330.20 [1] [h] ['not to exceed two years']; CPL 330.20 [1] [k] ['not exceeding fourteen days'])." (*Id.* at 103.)

Likewise, the Legislature did not include any language limiting the ability of a court to extend an order of conditions after expiration. Such limiting language has been included in other provisions of the statute (*compare*, CPL 330.20 [4] [examination order: confinement not to exceed 30 days]; CPL 330.20 [6] [initial hearing; commitment order: hearing must occur within 10 days after examination reports submitted]; CPL 330.20 [8] [first retention order: application must be made at least 30 days before commitment order expires]; CPL 330.20 [9] [second retention order: application must be made at least 30 days prior to expiration of first order]). Certainly, nothing in the statute expressly precludes a court from addressing an extension of an order of conditions after its expiration date, particularly where, as here, good cause supports the application. Both Ramon M.'s and Angelo G.'s psychiatrists submitted affidavits setting forth sufficient allegations of potential danger to warrant hearings. The policy in favor of continued supervision of insanity acquittees prior to discharge, combined with a broader concern of protecting the general public from releasing potentially dangerously ill patients, unsupervised, necessitates disregarding a mere technical defect. It also warrants a broad view of the court's jurisdiction to extend an order of conditions.

In *Oswald N.*, the Court of Appeals also recognized the concerns of the Law Revision Commission, which had proposed

the legislation which was largely incorporated in CPL 330.20. That Commission's report, quoted in *Oswald N.* (at 104), stated that since,

> " 'psychiatry cannot now guarantee the safety of the public from future dangerous acts of persons found not responsible * * * and will most likely be unable to do so in the foreseeable future, the procedures governing commitment, treatment, and release of such defendants are critically important. * * * [T]he mental condition of the defendant when released into the community—is the basis of public and professional concern' (1981 Report of NY Law Rev Commn, 1981 McKinney's Session Laws of NY, at 2261)."

In response to the argument that an expansive interpretation of CPL 330.20 (1) (o) could lead to indefinite extensions, the *Oswald N.* Court found that claim "belied by the provisions of CPL 330.20 which permit the Commissioner to apply for a discharge order terminating a defendant's order of conditions and releasing the defendant unconditionally" (*Oswald N., supra* at 105; *see*, CPL 330.20 [1] [n]; [13]).

Defendants in these cases also argue that because they cannot themselves petition for a discharge order, an expansive reading of the statute would be unconstitutional, as it would result in potentially interminable orders of conditions. However, defendants may seek a writ of mandamus pursuant to CPLR 7801 and 7803 (1) to compel the Commissioner to make an extension application, or may bring a petition for a writ of habeas corpus to challenge the Commissioner's continuing jurisdiction over them (*see, Thorpe, supra*).

In *Oswald N.*, the Court of Appeals harmonized the language of CPL 330.20 (1) (o) and 330.20 (13) and interpreted the statute to permit more than two consecutive five-year orders of conditions. That holding in *Oswald N.* supports the conclusion that blending the same provisions requires a court in the cases now before us to reach the merits of the extension application. A court must conduct a hearing to determine whether there is "good cause" to extend the orders of conditions under CPL 330.20 (1) (o), or whether insanity acquittees meet the criteria for discharge pursuant to CPL 330.20 (13).

Similar reasoning was recently applied in *Matter of Richard S.* (208 AD2d 750, *lv denied* 86 NY2d 704). In that case, the Second Department required a hearing prior to releasing a de-

fendant whose retention order, and presumably his accompanying order of conditions, had expired. That Court held that to release the defendant, who had been imprisoned on an unrelated conviction which was subsequently reversed on appeal, without holding a hearing as to his mental status "would be in contravention of the Legislature's intent to protect both the [defendant] and the public" (*id.* at 750). Also, in *People ex rel. Logatto v Hanes* (93 AD2d 676), the Third Department used the same approach to determine that the remedy for the Commissioner's failure to comply with the time requirements set forth in CPL 330.20 (8) was to order such compliance, rather than release the insanity acquittee. The *Logatto* Court stated,

> "While we certainly do not condone the commissioner's failure to fulfill his statutorily mandated duties, we do not find it to be the legislative intent to punish that dereliction by releasing a potentially dangerous patient into the community without judicial inquiry into his mental condition. That result would not only be contrary to the spirit of CPL 330.20, which requires a court order based upon psychiatric evaluations before a patient may be either retained *or* released, but would punish the public for a mistake made by the commissioner." (*Id.* at 678.)

As in *Richard S.* and *Logatto*, the interests of public safety should not be ignored by allowing insanity acquittees to be released, unsupervised into the community, without first determining whether they are in need of further observation to protect themselves and the public.

Accordingly, the orders of Supreme Court, Bronx County (Bertram Katz, J.), entered on or about October 20, 2000, and (Alan Saks, J.), entered on or about November 15, 2000, which dismissed applications to extend orders of conditions pursuant to CPL 330.20 (12), should be reversed, on the law, without costs, the applications granted, and the courts directed to conduct hearings to determine whether there is "good cause" to extend the orders of conditions under CPL 330.20 (1) (o), or to determine whether the insanity acquittees meet the criteria for discharge pursuant to CPL 330.20 (13).

NARDELLI, J.P., TOM, BUCKLEY and LERNER, JJ., concur.

Orders, Supreme Court, Bronx County, entered on or about October 20, 2000, and on or about November 15, 2000, reversed, on the law, without costs, the applications to extend orders of

conditions pursuant to CPL 330.20 (12) granted, and the courts directed to conduct hearings to determine whether there is "good cause" to extend the aforesaid orders, or to determine whether the insanity acquittees meet the criteria for discharge pursuant to CPL 330.20 (13).