[774 NYS2d 65]

In the Matter of ALBERT F., Appellant. COMMISSIONER OF NEW YORK STATE OFFICE OF MENTAL HEALTH et al., Respondents.

Second Department, March 15, 2004

APPEARANCES OF COUNSEL

*Mental Hygiene Legal Services*, Mineola (*Sidney Hirschfeld, Lisa Volpe, Dennis B. Feld* and *Kim Darrow* of counsel), for appellant.

*Eliot Spitzer, Attorney-General*, New York City (*Marion R. Buchbinder* and *Thomas B. Litsky* of counsel), for Commissioner of the New York State Office of Mental Health, respondent.

*William V. Grady, District Attorney*, Poughkeepsie (*Bridget Rahilly Steller* of counsel), respondent pro se.

## OPINION OF THE COURT

H. MILLER, J.

The issue in this case is whether, under CPL 330.20, the Supreme Court has the authority to extend an order of conditions after its expiration (*see* CPL 330.20 [1] [o]). We conclude that it does, in agreement with the decision of the Appellate Division, First Department, in *Matter of Stone* (294 AD2d 59 [2002]).

I

In 1979 Albert F. lured a teenage boy into the basement of his home, restrained him at gunpoint, sodomized him, amputated his genitalia, shot him in the head, and then cannibalized the victim's sexual organs.

Albert F. pleaded not responsible by reason of mental disease or defect (*see* Penal Law § 40.15), and was committed to the custody of the respondent Commissioner of the New York State Office of Mental Health (hereinafter the Commissioner). After an initial hearing, conducted under CPL 330.20, Albert F. was found to be suffering from a "[d]angerous mental disorder" (*see* CPL 330.20 [1] [c]), and thus was a "track-one" acquittee (*see* *Matter of Jill ZZ.*, 83 NY2d 133 [1994]; *Matter of Norman D.*, 309 AD2d 143 [2003] [describing track system], *lv granted* 1 NY3d 503 [2003]). He was confined to the Mid-Hudson Psychiatric Facility (hereinafter Mid-Hudson), a secure facility, pursuant to a commitment order dated December 29, 1980 (*see* CPL 330.20 [6]).

In early December 1984, based upon a finding that Albert F. no longer was suffering from a dangerous mental disorder, the

Supreme Court, Orange County, issued a transfer order (*see* CPL 330.20 [11]), as a result of which he was transferred to Kings Park Psychiatric Center (hereinafter Kings Park), a non-secure facility, in January 1985. As required by CPL 330.20 (11), the Supreme Court issued an order of conditions dated December 5, 1984, to accompany the transfer order. The order of conditions was valid for a period of five years, and provided, inter alia, that Albert F. was to comply with the terms of his prescribed treatment plan, and that he was not to leave the facility at which he was confined without authorization (*see* CPL 330.20 [1] [*o*]).

Although the governing statute, as interpreted by the Court of Appeals, authorizes an indefinite number of extensions of an order of conditions (*see Matter of Oswald N.,* 87 NY2d 98 [1995]), the Commissioner failed to seek an extension of Albert F.'s order of conditions in this case prior to its expiration in 1989. The Commissioner did not seek an extension until the events giving rise to this appeal, as further described below. However, over the years, the Commissioner did apply for and receive several retention orders, which authorized continued custody of Albert F. by the Commissioner (*see* CPL 330.20 [1] [g]-[j]).

In 1997 Albert F. was transferred to Pilgrim Psychiatric Center (hereinafter Pilgrim), and he continues to be retained involuntarily there.

In 1998 Albert F. sought a rehearing and review of a retention order dated September 24, 1998 (*see* CPL 330.20 [16]). A jury trial ensued; the jury found that Albert F. was mentally ill, but that he was not in need of continued inpatient treatment. Upon the motion of, among others, the Commissioner, the Supreme Court set aside the jury's verdict on the issue of whether Albert F. required continued inpatient care and treatment and entered judgment as a matter of law in favor of the Commissioner. On appeal, this Court determined that the Supreme Court properly set aside the jury verdict, since its conclusion that Albert F. did not pose a danger to himself or others was against the weight of the evidence. However, this Court concluded that the Supreme Court erred in entering judgment as a matter of law in favor of the Commissioner; instead, it should have ordered a new trial on the issue of whether Albert F. was in need of continued inpatient care and treatment. The matter was remitted for further proceedings (*see Matter of Albert F.,* 273 AD2d 308 [2000]).

The retrial took place in December 2001. During the trial, Albert F. was called as a witness and confronted with evidence

that prior to the 1979 murder, he repeatedly sodomized his neighbor's 10-year-old son during the course of tutorial sessions. Albert F. denied the allegation, but he withdrew his petition for a rehearing and review of the 1998 retention order.

Next followed the events giving rise to this appeal. In early January 2002, the Commissioner applied to the Supreme Court, Suffolk County, for an order recommitting Albert F. to a secure facility for a period of six months, on the ground that he had a dangerous mental disorder, constituted a danger to himself or others, and required treatment and rehabilitation (*see* CPL 330.20 [14]). In support of the application, Dr. Amy Resnick Klein, the Deputy Clinical Director of Pilgrim, submitted an affidavit and a separate analysis of Albert F.'s mental condition. Dr. Klein examined Albert F. on two occasions prior to the recommitment application, and testified during the December 2001 jury trial. Dr. Klein's opinion (as related both during her December 2001 testimony and in the recommitment application) was that Albert F. suffered from a severe and persistent personality disorder, and committed the 1979 murder while in a dissociated state. She could not rule out the possibility that he suffered from a paraphilia, which she identified as sexual sadism, a diagnosis she felt should be further considered and evaluated. Her opinion was that the personality characteristics that led to the 1979 torture and murder remained "relatively unchanged" to the present day, that Albert F. remained at risk for a reoccurrence of another violent episode, and that he should not be released from the hospital. Dr. Klein also noted that during the December 2001 jury trial, when confronted with evidence that he had sexually molested a 10-year-old boy prior to the 1979 murder, he withdrew his application for rehearing and review. This evidence about child molestation taking place prior to the 1979 murder and cannibalization evidently was not previously known to Albert F.'s doctors. Dr. Klein found "clinically significant" and "ominous" the possibility that Albert F. intentionally withheld information about past pedophilic behavior that not only had an impact on his diagnosis and treatment and on his potential for conditional release, but also on the public safety. In light of the revelation during the December 2001 trial, about Albert F.'s alleged pedophilia, its diagnostic implications had to be further explored.

Dr. Klein also opined that in light of Albert F.'s inability to convince his treatment team that he no longer suffered from the personality disorder that induced his tendency toward

violence, he came to believe that the December 2001 jury trial constituted his best chance of being released. She stated that the allegations aired at that trial would not bode well for him in future retention and other proceedings. Albert F., a man of "superior intelligence," understood the implications of his situation, and had remarked to certain hospital staff members that he would leave the facility if the trial did not lead to his release. Albert F. was not on medication, was in excellent health, had friends in the community who often drove onto the grounds to visit him, and had been seen getting into a motor vehicle on a number of occasions.

In response to the recommitment application, Albert F. moved, inter alia, to dismiss it on the grounds that it failed to state a cause of action and that the Supreme Court lacked subject matter jurisdiction to entertain it. The basis for both contentions was that there was no existing order of conditions. Albert F. argued that since CPL 330.20 (14) provides that the Commissioner or the District Attorney may apply for a recommitment order "[a]t any time during the period covered by an order of conditions," the necessary predicate for such an application was missing in this case.

Both the Commissioner and the Dutchess County District Attorney (hereinafter the District Attorney) responded to Albert F.'s motion. In addition, the Commissioner cross-moved for an order extending Albert F.'s long-expired December 5, 1984, order of conditions, nunc pro tunc.

On March 13, 2002, the Supreme Court, Suffolk County, heard oral argument on the motion and cross motion. By order dated May 17, 2002, the Supreme Court denied Albert F.'s motion to dismiss the Commissioner's application for a recommitment order and granted the Commissioner's cross motion for an order extending "successive" orders of conditions nunc pro tunc. The Supreme Court held, first, that there is no statutory requirement that a person found to suffer from a dangerous mental disorder be subject to an order of conditions. Here, due to Albert F.'s 20-year-old initial adjudication of dangerousness, the court was obligated to maintain a supervisory role, and thus an order of conditions was "superfluous." Second, even if that were not so, the Supreme Court reasoned that it had the inherent power to issue nunc pro tunc orders of conditions. The Supreme Court noted that there would be no prejudice to Albert F. because the Commissioner sought his recommitment due to his alleged danger to himself and to others—not because of a

violation of any term of an order of conditions. "Any other course," the Supreme Court determined, "would elevate form over substance" and would strip the Commissioner and the District Attorney of their supervisory authority and their ability to recommit an insanity acquittee who is a danger to himself or to others.

In September 2002 four days of hearings were held on the recommitment application. The District Attorney, the Commissioner, and Albert F. presented witnesses. The testimony need not be summarized, since Albert F. makes no argument on this appeal regarding the merits of the recommitment order.

On September 27, 2002, the Supreme Court stated on the record that it was satisfied from the psychiatric testimony, and the testimony of two victims who claimed that as children, Albert F. had sexually abused them, that Albert F. suffered from a condition for which he had not been diagnosed or treated. Thus, he posed a danger to himself and others. The court ordered him recommitted to a secure psychiatric facility for further treatment for a period of six months, and issued a written order to that effect the same day.

This Court subsequently granted leave to appeal from the order dated September 27, 2002.

On this appeal, Albert F. does not challenge the Supreme Court's finding, after the recommitment hearing, that he suffers from a dangerous mental disorder as that term is defined in CPL 330.20 (1) (c). Instead, he argues, inter alia, that the order dated September 27, 2002, should be reversed because of the Commissioner's failure to seek and obtain an extension of the order of conditions dated December 5, 1984. That failure, he contends, is fatal to the recommitment application; further, the Supreme Court had no authority to issue extensions of orders of conditions nunc pro tunc.

We disagree, and accordingly, we affirm.

## II

Initially, we note that Albert F. argued in the Supreme Court, in part, that the court lacked "subject matter jurisdiction" to entertain the recommitment application absent an extant order of conditions. Albert F. does not make this contention on appeal, and properly so. Certainly, the Supreme Court had "subject matter jurisdiction," in the sense of the "competence" described by *Lacks v Lacks* (41 NY2d 71 [1976]), to consider the recommitment application under the circumstances present here. The

Supreme Court "is a court of original, unlimited and unqualified jurisdiction" and "competent to entertain all causes of action unless its jurisdiction has been specifically proscribed" (*Lacks v Lacks, supra* at 75 [citations and internal quotation marks omitted]). As was the case with the Domestic Relations Law provision at issue in *Lacks,* nothing in the Criminal Procedure Law provisions involved here purports to limit the competence of the Supreme Court to adjudicate the recommitment application. In his reply brief, Albert F. seems to clarify his contention to the following: an outstanding, valid order of conditions is an essential element for recommitment, and its absence deprives the Supreme Court of the power to reach the merits of a recommitment application. For the reasons that follow, we reject that contention.

The reasoning of the Appellate Division, First Department, in *Matter of Stone* (294 AD2d 59 [2002]) disposes of Albert F.'s main argument, and his attempts to distinguish it are at odds with the position he took in the Supreme Court, and in any event, are without merit.

*Matter of Stone* involved appeals by the Commissioner in the cases of two "track-one" insanity acquittees. Both were initially placed in secure facilities, and eventually released into the community under supervision, and as relevant to this case, the orders of conditions applicable to both happened to expire before any application for their extension was made. In the case of Ramon M., the Commissioner did not apply for an extension of the order of conditions until two months after it expired. In the case of Angelo G., the New York State Office of Mental Health (hereinafter the OMH) applied for an extension of his order of conditions on November 2, 2000. The order had already expired, just a short time before, on October 14, 2000.

The Supreme Court denied the extension applications on the ground that they were sought after the applicable orders had expired; thus, it lacked jurisdiction to entertain them.

After thoroughly discussing the relevant provisions of CPL 330.20, the Appellate Division, First Department, reversed. Key to the Court's holding was the following observation:

> "The purpose of CPL 330.20 is to further the important policy of structuring [the] post-conviction supervision for individuals acquitted by reason of mental disease or defect . . . To simply dismiss the petition as untimely on jurisdictional grounds is

improper. By denying petitions as jurisdictionally defective, a motion court would divest OMH and the District Attorney of supervisory authority and permit insanity acquittees to be released into the community without any determination as to whether or not they are a danger to themselves or the public." (*Matter of Stone, supra* at 64.)

The First Department noted that the Legislature did not include any limiting language restricting a court's authority to extend an order of conditions after it has expired. Further, it also relied upon the Court of Appeals' flexible interpretation of the statute, demonstrated in *Matter of Oswald N. (supra)*. That case dealt with the proper construction of CPL 330.20 (1) (*o*), which provides, in relevant part, that the order of conditions shall be valid for five years from the date it issues, unless extended on a showing of good cause "for an additional five years." Based on that language, Oswald N. argued that the court's supervisory authority over him was limited to 10 years, and the court lacked jurisdiction to do what the OMH proposed to do there, which was to extend his order of conditions beyond that time. The Court of Appeals rejected this argument, noting in part that there is nothing in the statute's language that affirmatively limits the court only to two consecutive five-year orders of conditions (*see Matter of Oswald N., supra* at 103).

The First Department also observed:

"The policy in favor of continued supervision of insanity acquittees prior to discharge, combined with a broader concern of protecting the general public from releasing potentially dangerously ill patients, unsupervised, necessitates disregarding a mere technical defect. It also warrants a broad view of the court's jurisdiction to extend an order of conditions" (*Matter of Stone, supra* at 65).

We find *Matter of Stone*'s reasoning persuasive and adopt it here. We note that in his papers in the Supreme Court, Albert F. relied on the Bronx County Supreme Court's ruling in the case of Ramon M. (one of the two insanity acquittees whose appeal was before the Appellate Division in *Matter of Stone*), and characterized it as "directly on point." In the wake of the First Department's reversal, however, in his brief on this appeal, Albert F. now points to purported "decisive differences" between *Matter of Stone* and the instant case. His claimed distinctions do not call for a different result.

First, he argues that the extension applications in *Matter of Stone* were late by relatively short periods, and that both were made within the five-year extension period. That is true, but we fail to see how that claimed distinction makes a difference. If, as Albert F. would have it, the court's authority to entertain the extension application expires with the expiration of the extant order of conditions, that is the end of it. While the length of time between the order's expiration and the extension application may in a particular case have some relevance to the merits of the application, we conclude that it has no relevance to the court's authority to entertain it.

Second, Albert F. argues that *Matter of Stone* involved conditionally released acquittees, and thus the court's "overriding concern" was for the public safety, lest it be jeopardized by allowing a return to the community of insanity acquittees without a prior determination of whether they need further monitoring to protect themselves and the public. Here, however, Albert F. claims that his unsupervised release into the community is not an option, and he would not have been released had the Supreme Court denied the nunc pro tunc extensions. He argues that the Supreme Court's holding that he should be recommitted implies that had the only issue before the court been whether he should be retained at a nonsecure facility, then he would have been so retained and would continue to be confined in such a facility. However, we agree with the Commissioner that the same policy concerns at work in *Matter of Stone* are also implicated here. For one thing, as noted above, the procedures of CPL 330.20 are not designed solely to safeguard the public safety; the acquittee's well being is just as much of a concern. Both are involved here. The evidence indicates that Albert F. had an undiagnosed pedophilia—undiagnosed perhaps because he intentionally withheld pertinent information. Treatment of that condition is in his interest. Further, the record shows that he told staff members that he would leave the facility if his trial did not end in his release. We agree with the Commissioner that Albert F. does pose the risk of escape, and thus his hypothetical placement in a nonsecure facility, according to Albert F.'s argument, does not serve to adequately distinguish this case from *Matter of Stone*.

We note that the Criminal Procedure Law defines the term "order of conditions," in pertinent part, as follows: "an order directing a defendant to comply with this prescribed treatment plan, or any other condition which the court determines to be

reasonably necessary or appropriate, and, in addition, where a defendant is in custody of the commissioner, not to leave the facility without authorization" (CPL 330.20 [1] [o]). This subdivision was recently amended to authorize the court, when "reasonably necessary or appropriate" to issue an accompanying "separate order of conditions" requiring, inter alia, that an acquittee stay away from the victim of the offense or any designated witness, and to refrain from harassing the victim (*see* L 2003, ch 525). The order of conditions is the "vehicle by which the convicting court effectuates its continuing supervisory authority over the acquittee" (*Matter of Jill ZZ., supra* at 138; *see Matter of Stone, supra* at 63), and this is in recognition of the acquittee's "need for protection and treatment" (*Matter of Stone, supra* at 63, citing *Jones v United States*, 463 US 354, 366 [1983]). In other words, the order of conditions benefits the acquittee. As far as the record in this case shows, Albert F. has never complained that he was not receiving appropriate protection or treatment due to the lack of an order of conditions. In this case, the extension of orders of conditions nunc pro tunc in essence simply corrected the written record to conform to Albert F.'s situation.

We further note that the Supreme Court correctly observed that Albert F.'s recommitment was not based upon the violation of an order of conditions. Instead, it was based upon a finding that he suffers from a dangerous mental disorder (*see* CPL 330.20 [1] [c]). Thus, Albert F. was not prejudiced by the extension of orders of conditions nunc pro tunc (*Matter of Zamichow*, 176 AD2d 807 [1991]; *cf. Matter of Jill ZZ., supra* at 139).

In sum, we conclude that the Supreme Court had the authority to extend Albert F.'s orders of conditions, nunc pro tunc. Since a valid order of conditions thus was in effect when the Supreme Court proceeded with the recommitment hearing, and because Albert F. does not challenge the finding made based on that hearing that he currently is suffering from a dangerous mental disorder and that he is a danger to himself or to others (*see* CPL 330.20 [1] [c]), we uphold the recommitment order. Accordingly, the order is affirmed, without costs or disbursements.

We have considered Albert F.'s remaining contentions, and conclude that they are without merit.

RITTER, J.P., S. MILLER and GOLDSTEIN, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.