OPINION OF THE COURT
Raymond E. Cornelius, J.
The above-named patient was involuntarily admitted to the psychiatric department of Strong Memorial Hospital on June 11, 1988, based upon a two-physician certification pursuant to *802 Mental Hygiene Law § 9.27. On June 30, 1988, the patient requested a hearing, pursuant to Mental Hygiene Law § 9.31, which was thereafter scheduled. However, prior to the hearing, the New York State Mental Hygiene Legal Service, as counsel for the patient, made a motion for an order requiring discharge and release from the hospital. This application was based, in essence, upon the contention that the application and certification, pursuant to Mental Hygiene Law § 9.27, was defective and violative of due process because of the failure to allege and set forth facts establishing that the patient posed a real and present threat of substantial harm to herself or others, or what is sometimes referred to as a condition of dangerousness.[1]
Mental Hygiene Law § 9.27 (a) permits the director of a hospital to receive and retain any person alleged to have the following condition: "mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, accompanied by an application for the admission of such person.” The term "in need of involuntary care and treatment” is defined in Mental Hygiene Law § 9.01 as follows: "that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person’s welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment.” This procedure permits the director of a hospital to retain a patient for a period of 60 days from the date of admission. (See, Mental Hygiene Law § 9.31.) In the event a hearing is held, based upon a request made by a patient within that period of time, as occurred in this case, the director may retain the patient for a period of 30 days from the date of a court order denying release. (See, Mental Hygiene Law § 9.33.) Of course, if the director of a hospital wishes to retain an involuntary patient beyond the 60-day period, or 30-day period in a situation where a court has made an order denying release after a hearing, further application to the court is required. (See, Mental Hygiene Law § 9.33.)
Certain requirements must be met, as specified in Mental Hygiene Law § 9.27, before a person is involuntarily admitted as a patient to a hospital. These include the requirement that the application "contain a statement of the facts upon which *803 the allegation of mental illness and need for care and treatment are based”. (Mental Hygiene Law § 9.27 [c].) In addition, the two physicians certifying need for involuntary admission must consider alternative forms of care and treatment, and make a determination that they are either unavailable or inadequate. (Mental Hygiene Law § 9.27 [d].)
In this case, the application for admission was made by the patient’s daughter, who is one of the persons designated to make the application. (Mental Hygiene Law § 9.27 [b].) This application indicated that the patient was experiencing "emotional swings” and a "high degree of anxiety”. The certifications were signed by two physicians, E. Lynn Storie and Samuel L. Kent, both of whom are also psychiatrists. The certifications were contained on forms prepared by the Office of Mental Hygiene (OMH), which included the following preprinted finding in regard to the patient’s condition:
"1. has a mental illness;
"2. requires, as essential to his welfare, care and treatment as a patient in a hospital; and
"3. is so impaired in his judgment that he is unable to understand the need for such care and treatment.”
Both certifications also contained language to the effect that the physicians had considered alternative forms of care and treatment, which, as above indicated, is required by Mental Hygiene Law § 9.27 (d), as well as other preprinted statements. In addition, both Dr. Storie and Dr. Kent made written comments upon the certification forms. In general, this information indicated that the patient had had a long-standing history of bipolar disorder, or manic-depressive disease, and that she had been brought to the emergency department in an accelerated and irritable state. Furthermore, there was an indication that the patient had been prescribed lithium, which had stabilized her condition for approximately nine years, but that this medication had been discontinued and the patient had refused Tegretol, another prescribed medication. Although the hospital admitting record made reference to a prior suicide attempt, neither certification made mention of this fact, and contained no statement to the effect that the patient posed a real and present threat of substantial harm to herself or others.
The involuntary confinement of a mentally ill, but nondangerous, individual constitutes an unconstitutional exercise of a State’s power if that person "is capable of surviving safely in *804 freedom by himself or with the help of willing and responsible family members or friends”. (O’Connor v Donaldson, 422 US 563, 576 [1975].) In compliance with this constitutional rule, the appellate courts of the State of New York have held that a showing of mental illness, alone, is insufficient to involuntarily confine a person to a mental institution, but, in addition thereto, the State must prove by clear and convincing evidence that the person poses a substantial threat of physical harm to himself or others in order to justify such confinement. (Matter of Carl C., 126 AD2d 640 [2d Dept 1987]; Matter of Scopes, 59 AD2d 203 [3d Dept 1977].) It should be emphasized that both of these cases involved a review of orders of retention following a hearing, at which testimony and other evidence was submitted. Thus, neither decision directly addressed the issue of the appropriate standard to be applied for involuntary admission, pursuant to a two-physician certification, under Mental Hygiene Law § 9.27.
In the decision of Project Release v Prevost (722 F2d 960 [2d Cir 1983]), the statutory procedure for involuntary admissions, pursuant to the New York Mental Hygiene Law, was held to be constitutional. In so doing, the court specifically addressed the admission criteria and procedure under Mental Hygiene Law § 9.27, and held that an involuntary commitment under this section "without a finding of substantial and present risk of serious physical harm as evidenced by recent overt conduct” does not constitute a violation of substantive due process. (Project Release v Prevost, supra, at 972 [emphasis added].) In this case, the appellants had contended that the standard for an involuntary commitment, under Mental Hygiene Law § 9.27, was unconstitutional, which would result in an arbitrary application of the statute unless there was a finding of substantial and present risk of serious physical harm as evidenced by recent overt conduct. This decision affirmed a decision of a Federal District Court, which, as noted, determined that the New York involuntary commitment procedures, including those contained in Mental Hygiene Law § 9.27, do not operate to permit confinement of nondangerous, mentally ill persons, but "only persons who could not sustain themselves in the community”. (Project Release v Prevost, supra, at 972.) The lower court had found that such a result was assured because of several statutory provisions, including the requirement of multiple physician certification, the requirement that less restrictive alternatives be considered, and *805 the standard which provided for involuntary commitment only if essential to a person’s welfare.
Although Mental Hygiene Law § 9.27 does not expressly require a determination that the person to be committed poses a real and present threat of substantial harm to himself or others, this court holds that such a standard of dangerousness is constitutionally mandated before a person is involuntarily confined, based upon certification by two physicians.[2] This conclusion may be justified by either equating such standard with the definition of "in need of involuntary care and treatment”, which, in effect, the District Court did in Project Release v Prevost (supra) or simply superimposing such requirement on section 9.27, based upon the above-cited case law.
In the instant case, it has been established that the two physicians, who certified the patient’s need for involuntary commitment on June 11, 1988, had determined that she was a danger to herself, as well as mentally ill. In response to the motion for release, affidavits of the two physicians were submitted to the court. Dr. Kent, who had been a treating psychiatrist for the patient since 1983, indicated that he was aware of at least one serious suicide attempt in 1971. Beginning in 1979, the patient had received continuous medication treatment with lithium carbonate, a thymoleptic medication which prevents recurrence of episodes of mania or depression in patients with bipolar disorder. However, the patient developed physical problems in 1987, and the lithium carbonate was discontinued and an alternative medication, Tegretol, was prescribed. The patient subsequently objected to this medication, and treatment without any thymoleptic medications occurred for a period of time. Dr. Kent further indicated that, beginning in early June 1988, the patient began to manifest the recurring manic illness, and, based upon her conduct, as related by family members, determined that the patient was "at risk of self harm if she remained untreated”. Similarly, Dr. Storie indicated awareness of the prior attempted suicide, and diagnosed the patient on June 11, 1988 as exhibiting symptoms of "an acute manic phase”.
The remaining issue is whether or not this determination that the patient was a danger to herself was required to be *806 expressly set forth in the certification. The court’s attention has been directed to at least one, unreported decision, in which such requirement was imposed.[3] Although it certainly may be preferable to separately state a finding on the OMH section 9.27 admission forms that the patient poses a real arid present threat of harm to self or others, this court holds that such determination is now implicit in the findings, which do appear on the forms. These include findings that alternative forms of care and treatment have been considered, but that hospitalization is essential to the patient’s welfare, and, further, that the patient’s judgment is impaired to such a degree as to be unable to understand the need for such care and treatment. Nevertheless, as above indicated, Mental Hygiene Law § 9.27 (c) does require a statement of facts, which form the basis for both the allegation of mental illness and need for care and treatment. Thus, the physician’s certification should set forth facts, which would form the basis for concluding that the patient poses a real and present threat of harm to self or others. In the court’s opinion, the fact of the patient’s longstanding mental illness of bipolar disorder, discontinuation of medication, and recent aberrant behavior, all as set forth in the application and certifications, are sufficient to form such conclusion.
Based upon the foregoing reasons, it is hereby ordered that the motion for discharge and release of the patient is hereby denied, and the court will proceed to make a decision regarding retention for an additional 30-day period after completion of a hearing, held pursuant to Mental Hygiene Law § 9.31.

. A more appropriate procedure may have been a writ of habeas corpus, pursuant to Mental Hygiene Law § 33.15, but the court will, nevertheless, address the issue raised by this motion. .

. Cf., Mental Hygiene Law §§ 9.37 and 9.39, which also provide for involuntary admissions, but expressly require a determination of a "likelihood of serious harm” to the patient or others.

. Matter of DePass, 140 Misc 2d 654 (Sup Ct, Queens County, Mar. 7, 1988).