OPINION OF THE COURT
Raymond E. Cornelius, J.
This case raises the question concerning which party should assume the burden of proof in a hearing, conducted pursuant to Mental Hygiene Law § 9.31, following an involuntary admission, under Mental Hygiene Law § 9.27.
The patient, Charles Judge, is well-known to the court, based upon previous cases, and was most recently admitted to the Rochester Psychiatric Center, pursuant to section 9.27. This section provides for an involuntary admission to a hospital, based upon the certificates of two examining physicians, accompanied by an application. Under section 9.31, the director of the hospital may retain the patient for a period of up to 60 *204 days, unless the patient submits a written notice requesting a hearing on the need for involuntary care and treatment. In such event, the director of the hospital is mandated to forward a copy of the notice to the court, which is then required to schedule a hearing. The statute further provides that upon such hearing date, “the court shall hear testimony and examine the person alleged to be mentally ill, if it be deemed advisable in or out of court.” (Mental Hygiene Law § 9.31 [c].) In the pending case, Mr. Judge submitted a written notice, requesting a hearing, dated June 17, 2002.
At the hearing, the Attorney General, for the State of New York, appeared on behalf of the Rochester Psychiatric Center, and offered, and this court took judicial notice of, an order of Supreme Court from another county, dated June 7, 2002, issued pursuant to Mental Hygiene Law § 9.39. This section permits an emergency admission of an allegedly mentally ill person to a hospital for a period of up to 15 days. Again, however, provision is made for a hearing following a written request from the patient. The order recited that, at the request of Mr. Judge, such a hearing had been held on June 5, 2002, following his emergency admission to Clifton Springs Hospital and Clinic on May 23, 2002. The order also recited the court’s finding that there was reasonable cause to believe that Mr. Judge had a mental illness, namely, a bipolar disorder, which was likely to result in serious harm to himself or others and required immediate inpatient care and treatment. Accordingly, Mr. Judge was ordered to be retained for the 15-day period, during which time, as provided in section 9.39 (b), there was the involuntary admission to Rochester Psychiatric Center, supported by medical certification, which forms the basis for the current proceeding.
This court has conducted many hearings under section 9.31, and generally, the hospital assumes the burden of proof and goes forward with the evidence, which may include testimony from the treating psychiatrist and hospital records. In the pending matter, however, except for offering the aforementioned order, issued under section 9.39, the Attorney General took the position that the burden of proof should be placed upon the patient because he requested the hearing, and therefore, declined to call any witnesses or offer any other proof. The Mental Hygiene Legal Services, which represented Mr. Judge at the hearing, likewise did not offer evidence, but counsel did make an oral application that the case be dismissed and Mr. Judge be released from the hospital.
In the landmark decision of Addington v Texas (441 US 418 [1979]), the Supreme Court of the United States addressed the question of what standard of proof is required, in order to *205 satisfy due process standards, to justify an involuntary commitment of an individual to a state mental hospital. Although the patient, in that case, had been committed to a hospital for an indefinite period, the Court recognized that “civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.” (At 425.) Further, the Court concluded that, in a civil commitment proceeding, an individual’s interest in the outcome is sufficiently significant that due process requires the state to justify confinement based upon clear and convincing evidence, rather than a mere preponderance of the evidence, which is the usual standard in civil litigation.
The prerequisites for an involuntary civil commitment, under the New York Mental Hygiene Law, was summarized in Goetz v Crosson (967 F2d 29 [2d Cir 1992]). In order to meet the requirements of federal constitutional law, there must be proof, by clear and convincing evidence, that the subject of the commitment proceedings is mentally ill and “in need of involuntary care and treatment,” as provided in section 9.27 (a) and defined in section 9.01. Secondly, there must be proof, using the same standard, that the patient poses a substantial threat of physical harm to themselves or others. In this latter regard, the Supreme Court, several years prior to the decision in Addington, had ruled that a confinement of a mentally ill person, without proof of danger to themselves or others if released, was a violation of the due process clause. (O’Connor v Donaldson, 422 US 563 [1975].)
In Project Release v Prevost (722 F2d 960 [2d Cir 1983]), there was an exhaustive and detailed analysis of the provisions for voluntary, involuntary and emergency admission to hospitals, as contained in article 9 of the Mental Hygiene Law of the State of New York. In doing so, the Court of Appeals, Second Circuit, emphasized that the involuntary civil commitment to a mental institution represents a significant deprivation of liberty, which a state cannot accomplish without compliance with minimum substantive and procedural due process protections. The court concluded that both the procedural and substantive provisions of article 9 satisfied these constitutional requirements.
The Court of Appeals, Second Circuit, in Project Release, in relevant part, addressed several issues specifically relating to sections 9.27 and 9.31. Unlike section 9.39, involving emergency admissions, section 9.27 did not expressly require proof of dangerousness. Accordingly, petitioners had contended that this could result in erroneous hospitalization of nondangerous individuals, resulting in an unconstitutional deprivation of liberty, and further, that any finding of a risk of serious physical *206 harm should be evidenced by some recent overt conduct. However, the court ruled that section 9.27, as interpreted in Scopes v Shah (59 AD2d 203 [3d Dept 1977]), requires “a showing of dangerousness * * * ” and this satisfied minimum due process standards, without the necessity of also proving the manifestation by a recent overt act (at 974).
A reading of the decision in Scopes discloses that the case actually involved a review, under Mental Hygiene Law § 9.35, of a retention order, granted pursuant to section 9.33. In the event a patient, following involuntary admission, under section 9.27, either does not request a hearing or does so, and is denied release, the director of the hospital is authorized to retain the patient for 60 days from the initial date of admission, or 30 days following a court order denying release, whichever is later. However, unless the individual agrees to remain as a voluntary patient, it is incumbent upon the director to make application, pursuant to section 9.33 (a), for an order of retention, within such prescribed periods of time. The director is authorized, under this section, to retain the patient during the pendency of the application for a retention order. If there is no request for a hearing, or in the alternative, a hearing is held and the court determines that the patient is in need of retention, an initial order of retention may be issued for a period of six months from the date of the order. Prior to expiration of such retention order, further application for retention may be made by the director, and provision is made for a second retention order for a period of one year, and thereafter, for two-year periods.
Courts, in this state, have been consistent in placing the burden upon the hospital to establish, by clear and convincing evidence, that a patient is in need of retention and poses a substantial threat of physical harm to themselves or others, as a condition for issuance of a retention order under section 9.33. (Matter of Jeanette S., 157 AD2d 783 [2d Dept 1990]; Matter of Carl C., 126 AD2d 640 [2d Dept 1987].) Oftentimes, hospitals will make an application for an initial order of commitment, under section 9.33, following demand for a hearing, as provided in section 9.31, and submitted by a patient hospitalized under section 9.27. In such instance, the burden is again placed on the hospital to establish, by clear and convincing evidence, that the patient is mentally ill and in need of continued care and treatment, and further poses a substantial threat of physical harm to themselves or others. (Matter of Seltzer v Hogue, 187 AD2d 230 [2d Dept 1993].)
Mental Hygiene Law § 9.35 makes provision for an independent, judicial review of a court order, whether denying release or authorizing retention of a patient. In order to obtain a hear *207 ing, the patient is required to submit a petition, within a period of 30 days after the making of any such order. If the verdict of the jury, or if there has been a waiver of a trial by jury, the decision of the court, be that the individual is mentally ill and in need of retention, the court must certify such fact and make an order authorizing continued retention under the original order.
As aforementioned, the decision in Scopes involved a review, under section 9.35, of a one-year commitment order, granted under section 9.33. The Court remitted the matter for a new jury trial because the Court’s instructions were subject of being interpreted as not requiring the state to prove that the petitioner posed a serious threat of substantial harm to themselves or others. It is significant that the Court also declined to impose a burden upon the state of proof beyond a reasonable doubt, and stated that the correct standard was proof by clear and convincing evidence.
Although the Scopes case involved a review of a one-year commitment order, issued pursuant to section 9.33, the Court of Appeals, Second Circuit, in Project Release, relied upon the ruling, as requiring the state to prove, by clear and convincing evidence, that the patient posed a substantial threat of physical harm to themselves or others, as applicable to involuntary admissions under section 9.27. This court has previously reached a similar determination, as well. (See Matter of Stefano, 140 Misc 2d 801 [1988].) Further, the court, in Project Release, addressed the constitutionality of the timeliness of hearings, as required under section 9.31. The court acknowledged that under the statutory scheme, persons admitted pursuant to section 9.27 may be hospitalized for up to 60 days without a judicial hearing, absent a request, and indicated that if this were the total procedure, there may be some questions concerning the statute’s constitutional validity. However, the court further emphasized that the statute contained elaborate notice and hearing provisions, including the availability of a judicial hearing within five days of the court’s receipt of the demand, and therefore, concluded that the statute met the minimum procedure due process standards.
Based upon the foregoing discussion, it is apparent that the Court of Appeals, Second Circuit, has sustained the constitutionality of sections 9.27 and 9.31, based upon their interpretation that the state was required to make a showing of dangerousness and that the court was required to hold a prompt hearing in order to address that issue and the need for retention. In addition to proof that a patient would pose a danger to themselves or others if released, section 9.31 also requires evidence that the patient is “in need of retention,” *208 which is defined, in section 9.01, as being “in need of involuntary care and treatment.” Therefore, in this court’s opinion, any ruling, placing the burden upon the patient to establish the contrary, would subject sections 9.27 and 9.31 to constitutional infirmity.
The Attorney General, in support of the position that the burden of proof should be placed upon the patient, relies upon three decisions, all of which predate Project Release and written by the same Supreme Court Justice during the year 1980. In Matter of Rochman (104 Misc 2d 218 [1980]), the court acknowledged that the United States Supreme Court’s decision in Addington required clear and convincing proof before an individual could be committed involuntarily to a state mental hospital. The court found that the patient had made an application for a hearing, under section 9.31, following an involuntary admission, pursuant to section 9.27, as an incident of the total admission, and therefore, determined that the burden of proof should be placed upon the hospital. However, the court commented that if the patient had made an application later in his period of detention, there might be a contrary ruling. In a decision, issued several years later by a different Supreme Court Justice, and, which involved an issue of a patient privilege, the court cited Matter of Rochman, with approval. (Matter of Barbara W., 142 Misc 2d 542 [1988].) However, that court ruled that the psychiatric hospital must establish, by clear and convincing proof, the need for involuntary treatment and care without any limitation as to whether or not the request for a hearing was incidental to the initial admission.
In Matter of Hurley (104 Misc 2d 582 [1980]), the same court, which had authored the decision in Rochman, placed the burden of proof upon a patient, to establish, by a fair preponderance of the evidence, that he was no longer in need of involuntary care and treatment. The patient had made a request for a hearing, under section 9.31, and had been confined for a period of time following conversion to the status of an involuntary admission, under section 9.27, and therefore, his application was not considered as incidental to the admission. The court, in support of this determination, cited Matter of Lublin v Central Islip Psychiatric Ctr. (43 NY2d 341 [1977]). However, this Court of Appeals decision related to a defendant, who had been found not guilty by reason of mental disease or defect, and thereafter, sought his release under provisions of the Criminal Procedure Law. Similarly, this court does not regard a request for a hearing, under section 9.31, to constitute a habeas corpus proceeding, wherein the burden of proof may be placed upon a patient seeking release. (See Mental Hygiene Law § 33.15; cf. Matter of Winslow v O’Neill, 153 AD2d 563 [2d Dept 1989].)
*209 Finally, the Attorney General cites Matter of Parthymuller (106 Misc 2d 893 [1980]). This case involved a review hearing, under section 9.35, following an order of commitment issued pursuant to section 9.33. Again, the court relying upon Matter of Lublin and its early decision in Matter of Hurley, stated that the burden of proof should be imposed upon the patient to establish, by a fair preponderance of the evidence, that he may be safely released from the hospital. This holding would appear to be inconsistent with later Appellate Division decisions, wherein the burden of proof has been placed upon the hospital in a hearing for a review of a previous order of commitment. (See e.g., Matter of Naila Y. v Sanchez, 215 AD2d 183 [1st Dept 1995]; Matter of Edward L., 137 AD2d 818 [2d Dept 1988].)
This court concludes that, at a hearing, conducted pursuant to section 9.31, following a request of a patient involuntarily admitted, under section 9.27, the burden should be placed upon the hospital to establish, by clear and convincing evidence, that the patient is in need of retention, as defined in section 9.01, and if released, would pose a danger to themselves or others. The provision, contained in section 9.31, requiring the patient to initiate the request for a hearing, is simply a procedural device invoking such patient’s statutory and constitutional right for a judicial determination of their continued, involuntary confinement. Indeed, under the review provisions of section 9.35, a patient must initiate such proceedings by filing a written petition, but there is no authority for the proposition that the patient thereby assumes the burden of proof. In this court’s opinion, and for reasons already discussed, placing the burden of proof upon a patient, in a hearing conducted pursuant to section 9.31, would contravene the minimum standards of due process.
In the pending matter, the court has taken judicial notice of the previous order, issued under section 9.39, authorizing the emergency admission of Mr. Judge to continue for a 15-day period. However, such order, under section 9.39, is based upon a lesser standard of “reasonable cause” to believe that the patient was mentally ill and in need of retention. This would be insufficient to support a determination, by this court, under section 9.31, that the patient is in need of continued retention for a period of 60 days, following his involuntary admission, pursuant to section 9.27. Accordingly, because the Rochester Psychiatric Center did not produce sufficient evidence, and sustain their burden of proof, by clear and convincing evidence, Mr. Judge should be released from confinement in that facility.