■ In the Matter of EDWARD L., Appellant. PILGRIM PSYCHIATRIC CENTER, Respondent.—In a proceeding for an order of retention pursuant to Mental Hygiene Law § 9.27, the appeal is from an order of the Supreme Court, Suffolk County (Willen, J.), dated December 11, 1987, which, upon rehearing and renewal, continued the appellant's retention pursuant to an order of the same court (Hurley, J.) dated October 16, 1987.

Ordered, that the order dated December 11, 1987 is reversed, on the law and the facts, without costs or disbursements, and the respondent Pilgrim Psychiatric Center is directed to release the appellant.

On July 14, 1987, the appellant was admitted to the Pilgrim Psychiatric Center pursuant to Mental Hygiene Law § 9.27. The hospital sought and obtained an order allowing it to retain the appellant for a six-month period expiring April 16, 1988. Pursuant to Mental Hygiene Law § 9.33, the appellant requested a rehearing, which was heard by a different Judge. During the hearing, over the appellant's objection, the court admitted into evidence the appellant's complete hospital records which contained the notes of numerous members of the hospital's staff. The hospital's sole witness, Dr. Alain Kruh, one of the appellant's treating psychiatrists at the hospital, used the record and its comments as the basis for his opinions that the appellant was mentally ill and that he poses a substantial risk of danger to himself or to others *(see, e.g., People ex rel. Adams v Acrish,* 133 AD2d 873). Following the hearing, the court upheld the initial retention order and continued the appellant's retention. We conclude that the evidence upon which the doctor's opinions and the court's conclusions were based was insufficient, and, therefore, reverse.

In order to obtain or continue an order of commitment, the hospital must establish by clear and convincing evidence, not only that the patient is in need of further care and treatment, but that the patient is mentally ill and poses a substantial threat of physical harm to himself or others *(see, People ex rel. Adams v Acrish, supra; Matter of Harry M.,* 96 AD2d 201, 206). " '[I]t is possible for many non-violent persons who suffer from a mental disease * * * to live outside of an institution, and when they prefer to do so, regardless of the wisdom of their decision or the strength of their reasoning powers, they have their constitutional right to follow their own desires' " *(Matter of Harry M., supra,* at 207, quoting *Kendall v True,* 391 F Supp 413, 418). The record was nearly devoid of evidence that the appellant is a danger to himself or to others. The little evidence that could support the necessary conclusions was plainly insufficient.

Dr. Kruh stated that he believed that appellant needed hospitalization because he lacked insight and judgment. He said the appellant lacked insight because of his denials that he was mentally ill, and judgment because he wanted to return to the community without treatment and did not wish to take medication. Dr. Kruh initially made conclusory assertions that the appellant would pose a danger to himself or others. When pressed by the court for the basis of this opinion, he relied largely on a motorcycle accident in which the

appellant had been involved five years earlier and a "reported history of drug abuse". Concerning the accident, he referred to notes in the hospital records which stated that after the accident the appellant had remarked that someone had been pursuing him and that the accident occurred while he was fleeing. On the other hand, the appellant testified that the accident had been due to another vehicle's violating a stop sign and entering the road directly in the path of his motorcycle. The appellant also indicated that he was going to "drop [a passenger] off" somewhere—a purpose inconsistent with the claim that he was fleeing from some imagined pursuers at the time of the accident. With respect to the allegation of drug abuse, there was no indication that the appellant had any present problem with drugs.

The other incident upon which the hospital relied heavily was the one which precipitated his admission in July 1987, i.e., the allegation that the appellant barricaded himself inside the house in which he and his grandmother resided, disconnected the telephones and shut off the circuit breakers, and police had to be summoned to take him to a hospital. The appellant again gave a version which shed quite a different light on this incident. As just one example of the difference in perspective, the appellant said he simply refused to respond to the requests of his grandmother's health care worker to enter the house, but said he believed she had her own key and usually let herself in.

According to the hospital records, the appellant was sometimes withdrawn and hostile, but never physically aggressive. Contrary to Dr. Kruh's testimony, those records indicate that, except for his refusal to take medication, the appellant was generally cooperative. Other than the matters mentioned above and a few other passing comments in the record about events remote in time or of marginal significance, there was no sign that the appellant posed any danger to himself or others. The evidence in the record falls far short of the showing required to justify involuntary commitment *(see, Matter of Harry M., supra,* at 206-207; *cf., People ex rel. Adams v Acrish, supra; Matter of Lyle G. v Harlem Val. Psychiatric Center,* 134 AD2d 470). Accordingly, the order directing the appellant's continued commitment should be reversed, and the respondent is directed to release him. Lawrence, J. P., Eiber, Harwood and Balletta, JJ., concur.