■ In the Matter of DANIEL XX. JOSEPH J. COLARUSSO, as Director of Sunmount Developmental Disabilities Services Office, Appellant; DANIEL XX., Respondent. [861 NYS2d 838]—

Spain, J.P. Appeal from an order and judgment of the Supreme Court (Demarest, J.), entered November 1, 2007 in Franklin County, which, upon rehearing, dismissed petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 15, for the involuntary retention of respondent.

Respondent is currently retained as an involuntary resident at Sunmount Developmental Disabilities Services Office (*see* Mental Hygiene Law § 15.13 [b]; § 15.33).[1] In March 2006, petitioner, Sunmount's director, applied for the involuntary

---

1. Respondent's residency at Sunmount began in 2000, when he voluntarily entered as a condition of his parole from prison where he had served nine years of a 6 to 12-year prison term for his convictions of attempted rape in the first degree and burglary in the second degree. Respondent first requested that he be released from Sunmount on November 7, 2001, and petitioner, Sunmount's director, applied for and was granted authorization to retain respondent involuntarily for 60 days (*see* Mental Hygiene Law § 15.13 [b]). Petitioner then applied for a one-year retention of respondent, which was granted following a hearing in March 2002 (*see* Mental Hygiene Law § 15.13 [b]). Respondent again requested his release in March 2003, but apparently

retention of respondent for two more years. Following a hearing, Supreme Court granted the application. Respondent then sought a rehearing (see Mental Hygiene Law § 15.35), following which a jury found that respondent was not in need of inpatient care and treatment and petitioner's application was dismissed by Supreme Court. On petitioner's appeal,[2] we now reverse.

To involuntarily retain a person who is developmentally delayed as a resident at a facility such as Sunmount, the petitioning agency has the burden of proving, by clear and convincing evidence, "that the person is in need of in-patient care and treatment, such care and treatment is essential to the person's welfare, and the person's judgment is so impaired that he or she is unable to understand the need for care and treatment" (Matter of Sidney JJ., 30 AD3d 959, 960 [2006]; see Mental Hygiene Law §§ 15.01, 15.27). Additionally, "[i]ncluded within such proof must be the constitutionally required showing that [respondent] poses a substantial threat of physical harm to [him]self or others" (Matter of Sidney JJ., 30 AD3d at 960; see Matter of Scopes, 59 AD2d 203, 205 [1977]; see also Matter of Bethune M., 12 AD3d 605, 606 [2004]). At this juncture, no dispute exists that respondent is developmentally disabled. The jury so found, but then found that he is not in need of inpatient care. Certainly, "a jury verdict is entitled to great deference and, if sufficient evidence exists, the verdict will be sustained even if other evidence in the record would support a contrary result" (Matter of Michael RR., 284 AD2d 786, 787 [2001]). Indeed, a jury verdict may be set aside as against the weight of the evidence " 'only when the evidence preponderates so greatly in the movant's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence' " (Sprung v O'Brien, 168 AD2d 755, 755 [1990], quoting Frasier v McIlduff, 161 AD2d 856, 858 [1990]; accord Matter of Michael RR., 284 AD2d at 787).

In support of its application, petitioner presented the testimony of expert witness John Niederbuhl, a Sunmount psychologist. Niederbuhl testified that respondent has a disability attributable to a neurological impairment and that he has psychiatric diagnoses of polysubstance abuse, which arises from

accepted an additional one-year retention without a hearing. Thereafter, in February 2004, petitioner applied for the involuntary retention of respondent for two years (see Mental Hygiene Law § 15.13 [b]). This application was initially dismissed by Supreme Court (Feldstein, J.), but the judgment was subsequently reversed by this Court (Matter of Daniel XX., 20 AD3d 759 [2005], lv denied 6 NY3d 701 [2005]).

2. Petitioner's appeal invoked an automatic stay of Supreme Court's order and judgment (see CPLR 5519 [a] [1]).

his history of alcohol and drug abuse, and schizoaffective disorder, bipolar type, which is manifested by his history of hallucinations and depression. Niederbuhl also opined that respondent suffers from antisocial personality disorder and that, given his assaultive, abusive behavior, combined with his refusal to voluntarily take necessary medications, he "would be dangerous to other people" if released. Specifically, Niederbuhl testified that respondent was prescribed Depakote, a drug designed to alleviate his violent behavior, but that respondent refused to take the medication, to submit to the blood tests necessary to determine whether the medication had reached a therapeutic level in his blood, and to follow up with a psychiatrist to determine whether the medication was effective. Petitioner had to obtain court orders to force respondent to cooperate in this regard. According to Niederbuhl, respondent has never been able to sustain employment of any kind and has failed to register, as required, under the Sex Offender Registration Act. The psychologist explained that respondent lacks anger management and social skills and receives training and counseling in those areas at Sunmount. Ultimately, Niederbuhl opined that respondent is in need of inpatient care and treatment as a resident at Sunmount because "he [cannot] get along in society[, nor can he] meet his own needs without a tremendous amount of support."

Niederbuhl's testimony is corroborated by Sunmount's daily monitoring notes on respondent between October 2006 and October 2007; they reveal a pattern of assaultive, verbally abusive and sexually inappropriate behavior. In addition to harassing patients and staff on an almost daily basis, respondent started three physical altercations with patients, one of which involved him punching a staff member in the back, and he masturbated in front of female staff on three separate occasions.

Petitioner also presented the testimony of Catherine Malerba, a developmentally secure care treatment aide supervisor at Sunmount, who described an incident that occurred during the initial hearing on this application. Malerba was the supervisor of the three-person team that transported respondent to and from the courthouse and, from her seat at the hearing directly behind respondent and his counsel, observed respondent suddenly jump out of his seat and violently punch his attorney in the side of the head. Respondent had to be physically restrained and was eventually injected with a sedative; Malerba estimated that it was close to three hours before respondent could safely be released from physical restraint and transported back to Sunmount.

Respondent also testified before the jury. He stated that he should be released because he has "paid [his] debt to society" and will not harm himself or anyone else. He explained that, if released, he plans to live with his brother in Atlanta, Georgia, and obtain a job doing janitorial work. However, when asked about some of the specific conduct described herein, respondent defended his behavior. With respect to the assault upon his attorney, he justified his behavior, stating, "I believe the lawyer threatened me. I believe that, you know, he caused me pain, humiliation; and, you know, he was treating me like a prostitute." He explained his assaultive behavior toward the patients and staff at Sunmount by stating that "[f]rom time to time we have a little argument; but when they put their hands on me physically I have to, you know, protect myself." When testifying as to why he refused to take the Depakote, respondent blamed the fact that he was assigned a different attorney who "was trying to use his muscle against me and so many words, you understand, . . . I felt threatened. You know what I am saying. My back was against the wall." Respondent also denied ever having any problem with alcohol or drugs or ever having experienced hallucinations.

In our view, no fair interpretation of this evidence supports the conclusion, reached by the jury, that respondent is not in need of in-patient care and treatment (*see Matter of Anonymous v Carmichael*, 284 AD2d 182, 184 [2001]; *Matter of Albert F. [Commissioner of N.Y. State Off. of Mental Health]*, 273 AD2d 308, 309 [2000]; *see also Matter of Commissioner of Off. of Mental Health v Glenn B.*, 44 AD3d 517, 518 [2007]; *Matter of Luis A.*, 13 AD3d 441, 442-443 [2004]; *Matter of Lamont D.*, 9 AD3d 630, 631 [2004], *lv denied* 3 NY3d 609 [2004]; *Matter of Dionne D.*, 5 AD3d 766, 767-768 [2004]; *Matter of Ford*, 229 AD2d 319, 319-320 [1996]; *compare Matter of Michael RR.*, 284 AD2d at 787). In demonstrating respondent's failure to accept his need for treatment and consistent refusal to take his medication, and his pattern of assaultive, threatening and abusive behavior toward others, we find that petitioner overwhelmingly met its burden of proving, by clear, convincing and uncontroverted evidence, that respondent is in need of inpatient care and treatment (*see Matter of Anonymous v Carmichael*, 284 AD2d at 184; *see also Matter of Lamont D.*, 9 AD3d at 631; *compare Matter of Sidney JJ.*, 30 AD3d at 960; *Matter of Edward L.*, 137 AD2d 818, 819-820 [1988]).

In light of the fact that, having found that petitioner was not in need of inpatient care, the jury did not reach the remaining issues, we agree with petitioner's position that a new trial on all

issues should be held where a jury will consider petitioner's condition at that time (*see Matter of Albert F. [Commissioner of N.Y. State Off. of Mental Health]*, 273 AD2d at 309; *Matter of Scopes*, 59 AD2d at 206-207; *see also Matter of Norman D.*, 3 NY3d 150, 155 [2004]).

Lahtinen, Kane, Malone Jr. and Stein, JJ., concur. Ordered that the order and judgment is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.