[896 NYS2d 583]

In the Matter of STATE OF NEW YORK, Petitioner, v JOHN DOE, Respondent.

Supreme Court, Franklin County, December 23, 2009

**APPEARANCES OF COUNSEL**

*Mental Hygiene Legal Service* (*Sheila E. Shea* and *David M. LeVine* of counsel), for respondent. *Andrew M. Cuomo, Attorney General* (*Glen Francis Michaels* and *Tiffinay M. Rutnik* of counsel), for petitioner.

**OPINION OF THE COURT**

DAVID DEMAREST, J.

This is a special proceeding, pursuant to article 10 of the Mental Hygiene Law, which seeks the civil confinement of the respondent as a "dangerous sex offender." Respondent moves to dismiss for lack of subject matter jurisdiction and on the further grounds that the application of article 10 to this respondent would violate his constitutional right to due process of law.

There are two questions presented for resolution. First, may the Attorney General file a "sex offender management petition" based upon a report of a "psychiatric examiner" who did not personally interview the respondent. Second, do the Due Process Clauses of the United States and New York State Constitutions preclude the State from pursuing an article 10 civil commitment against a person who has never been convicted of a sexual offense and who currently lacks capacity to stand trial.

There are no factual issues presented as the allegations of the petition are deemed true in assessing this pre-answer motion to dismiss, and from the papers submitted it is apparent that the underlying facts are not disputed.

## Procedural History

Respondent, currently 36 years old, has spent the majority of his life in restrictive residential facilities. He has a history of assaultive and destructive behavior, both in the community and in the various facilities where he has resided. He has been diagnosed with mental illnesses and mild to moderate mental retardation. In 2002, he was confined at Taconic Developmental Center by the Office of Mental Retardation and Developmental Disabilities (OMRDD), pursuant to article 15 of the Mental Hygiene Law.

On November 8, 2004, it is alleged that at Taconic he assaulted a female speech pathologist who was providing therapy. In December 2004, he was committed to Sunmount Developmental Center pursuant to a temporary order of observation under article 730 of the Criminal Procedure Law. Thereafter, he was indicted for sexual abuse in the first degree by a Dutchess County grand jury. On March 10, 2005, again pursuant to CPL article 730, the Dutchess County Court adjudicated him an incapacitated person, unable to understand the charges against him and incapable of assisting in his defense, and he was committed to the custody of the Commissioner of OMRDD. Respondent has continued to reside at Sunmount since his initial commitment in 2004.

During his confinement, respondent has been reviewed four times by staff to determine his capacity to stand trial, and has consistently been found to be incapacitated resulting in sequential commitment orders of one year, one year, two years and, finally, six months. His most recent evaluation was conducted on December 23, 2008.

The criminal charge of sexual abuse in the first degree terminated pursuant to CPL 730.50 (3) and (4) when his period of confinement equaled two thirds of the maximum sentence he could have received were he to have been convicted. Typically, a person whose CPL article 730 confinement has maxed out and who continues to require residential treatment will be converted to a Mental Hygiene Law article 15 admission, either voluntarily or involuntarily by court order. In this case, on September 3, 2009, the State originally initiated this proceeding pursuant to article 10 of the Mental Hygiene Law, alleging he is a dangerous sex offender requiring civil confinement. On October 1, 2009, a second application was made for involuntary commitment under Mental Hygiene Law article 15.

## Proceedings Thus Far under Mental Hygiene Law Article 10

As respondent neared the expiration of his CPL article 730 commitment, OMRDD identified him as a possible "detained sex offender" and provided notice to him, pursuant to Mental Hygiene Law § 10.05 (e), that his case was to be reviewed by a "case review team." The written notice was read to respondent by an OMRDD employee on July 1, 2009, in the presence of a Mental Hygiene Legal Service (MHLS) attorney. By letter dated July 2, 2009, that attorney advised OMRDD that MHLS would be representing respondent and that he would not undergo a

psychiatric examination absent a court order pursuant to Mental Hygiene Law § 10.06 (d).

Despite this letter, OMRDD scheduled a psychiatric examination for August 13, 2009, and attempted to have respondent consent to the exam without advising counsel. At the scheduled exam, respondent, now accompanied by an attorney, refused to be examined and signed a document to that effect. Thereafter, an evaluation was performed by a licensed psychologist based upon his review of the available records. Relying upon the evaluation report prepared, which opined that respondent suffers from a mental abnormality (Mental Hygiene Law § 10.03 [i]), the case review team determined that respondent was a sex offender requiring civil management and forwarded its findings to the Attorney General. (Mental Hygiene Law § 10.05 [g].) This proceeding was then commenced by order to show cause dated September 3, 2009. Upon stipulation of counsel, the requirement that a probable cause hearing be held within three days was waived and it was agreed that no further psychiatric exam would be conducted absent further court order.

Respondent's Motion to Dismiss for Failure to State a Cause of Action Because the Psychological Evaluation upon Which it is Based did Not Include a Personal Interview

█ Article 10 of the Mental Hygiene Law sets up two distinct levels of review by two different agencies in making the initial determination that a petition for civil confinement should be initiated. The initial review directs the Office of Mental Health (OMH) to establish a case review team which *"may* arrange for a psychiatric examination of the respondent" (Mental Hygiene Law § 10.05 [e] [emphasis added]). Thus, there is no requirement that a psychiatric examination be performed at this initial stage. Nor are there any directives in the statute as to how the case review team makes its decision or how any examination must be conducted. Although section 10.05 (g) does require that a finding that one is a sex offender requiring civil management be accompanied by a written report from a psychiatric examiner, there is no directive that the report be recent or have been done at the request of the team. There is no specific direction that the subject be personally interviewed by anyone.

Respondent improperly relies upon section 10.06 for his argument that the remedy for the refusal of a subject to be personally interviewed is a request for a court order. Section 10.06 provides for the second level of review in the process which is

conducted by the Attorney General. This section provides discretion to the Attorney General as to whether to file a petition at all. To assist in making that decision, section 10.06 (d) permits the Attorney General, at any time after receiving notice from OMH of a potential sex offender in need of civil confinement, to request an order that respondent submit to a psychiatric exam. This procedure in no way refers to the initial review by OMH and cannot be construed to require OMH to seek a court-ordered personal examination before performing a case review.

Whether a "paper only" evaluation is sufficient is first a decision for the case review team, then for the Attorney General, and then for the court. It is really a question of the quality of the evidence in assessing whether or not a petition states a cause of action. It must be scrutinized in a light most favorable to petitioner. In this case, the records reviewed were voluminous and consistent and certainly provide sufficient basis for the allegations of the petition. Whether the evaluation will support the ultimate determination must be left for the factfinder. (*Matter of John N.*, 52 AD3d 834 [2d Dept 2008]; *Matter of Melvin S.*, 57 AD3d 1002 [2d Dept 2008].) Respondent's motion to dismiss for failure to state a cause of action is denied.

## Would Subjecting this Respondent to an Article 10 Sex Offender Management and Treatment Proceeding Violate His Right to Due Process?

It has been conceded by the petitioner that by virtue of a preliminary injunction issued by the United States District Court for the Southern District of New York (*Mental Hygiene Legal Serv. v Spitzer*, 2007 WL 4115936, 2007 US Dist LEXIS 85163 [SD NY 2007], *affd sub nom. Mental Hygiene Legal Servs. v Paterson*, 2009 WL 579445, 2009 US App LEXIS 4942 [2d Cir 2009]), a person such as respondent, who has been declared incompetent to stand trial pursuant to CPL article 730, may not be civilly confined under article 10 of the Mental Hygiene Law without proof beyond a reasonable doubt that he/she committed a sex offense. This requires, in effect, a trial within a trial, where the underlying charge must be established just as if the original indictment had proceeded to trial. A jury must first find guilt beyond a reasonable doubt before it would be instructed to determine whether the respondent is a dangerous sex offender in need of further confinement or supervision.

It is respondent's position that—given his continued incompetency to stand trial—to subject him to an article 10 proceeding

will necessarily violate his constitutional rights to due process. Petitioner argues that the State's strong interest in detaining and treating sex offenders in a civil commitment proceeding provides justification to proceed, despite a respondent's incapacity.

There does not appear to be any precedent specifically addressing this issue. Respondent cites to case law involving the civil confinement of juveniles to support his position. *In re Gault* (387 US 1 [1967]) held that juveniles must be afforded the full panoply of rights that adult criminal defendants have before they can be civilly confined for engaging in criminal activity. Similarly, *In re Winship* (397 US 358 [1970]), reversing the New York Court of Appeals (24 NY2d 196 [1969]), held that a juvenile's commission of a crime must be proved beyond a reasonable doubt despite the fact that juvenile delinquency proceedings do not result in the conviction of a crime. The Court refused to allow "civil labels and good intentions" to trump the need for due process safeguards where a child could be forever labeled "delinquent" and subject to loss of liberty (397 US at 365-366).

Relying on this precedent, the District Court in *Mental Hygiene Legal Serv. v Spitzer* (2007 WL 4115936, 2007 US Dist LEXIS 85163 [2007]), found that persons who are incapacitated must also be afforded their due process rights in a Mental Hygiene Law article 10 proceeding. As in *Winship*, the fact that one may be deprived of liberty and designated as a "dangerous sex offender" is what triggers due process rights and it is immaterial that the proceeding is labeled "civil."

The cases cited by respondent applying the same standards for determining incompetency to stand trial to juveniles as adults are instructive here. (*Matter of Jay S.*, 37 AD2d 815 [1st Dept 1971] [Family Court must initially make determination as to child's competency before proceeding to factfinding]; *Matter of Jeffrey C.*, 81 Misc 2d 651 [Fam Ct, City of NY 1975] [juvenile entitled to all formalities available to adult in determining competency to stand trial]; *People ex rel. Thorpe v Clark*, 62 AD2d 216 [2d Dept 1978] [commitment of incapacitated juvenile must be made under Mental Hygiene Law and not Criminal Procedure Law due to inability to participate in adjudicatory hearing].) There is nothing in article 10 that can be said to distinguish it from a criminal prosecution or juvenile delinquency proceeding in the need to find one responsible for a criminal act and the mandate that full due process rights must be afforded to a person sought to be confined or supervised.

There are other compelling reasons to find that this respondent should not be subjected to an article 10 proceeding. This crime was unwitnessed and requires proof that the assault was motivated "for the purpose of gratifying sexual desire." (Penal Law § 130.00 [3].) Here, the proven mental retardation and limited functioning of the respondent will make it virtually impossible for counsel to prepare a defense.

There is no need to proceed under Mental Hygiene Law article 10, since the State may insure the respondent's continued confinement in an appropriate institution under Mental Hygiene Law article 15. Indeed, that process has already been commenced by the filing of an appropriate petition. So long as the respondent remains in need of services and can be demonstrated to be a danger to himself or others, he will not be permitted to return to society.

Finally, the record indicates that the respondent has not participated in sex offender treatment while at Sunmount. Not only is his functioning such that he cannot benefit from the classes offered, in addition it has been suggested that to expose him to the classes might very well trigger inappropriate responses. Article 10 is premised upon a legislative finding that recidivist sex offenders "pose a danger to society that should be addressed through comprehensive programs of *treatment* and management" and that the approach should be "sufficient to provide *meaningful treatment*." (Mental Hygiene Law § 10.01 [a] [emphasis added].) In his current condition, it is difficult to imagine how this man could receive any treatment for any alleged sexual aberration, much less *meaningful* treatment. A finding that he is a dangerous sexual offender in need of confinement would mean that he would be housed with only sexual offenders and not persons like himself who suffer from mental retardation or developmental disabilities.

It is therefore found that article 10 of the Mental Hygiene Law is unconstitutional as it applies to a person who has never been convicted of an underlying sexual offense and who continues to be incapacitated and unable to assist in his defense under the criteria of CPL article 730. The motion of the respondent to dismiss the petition is granted.