OPINION OF THE COURT
Michael A. Gross, J.
In January 2010, this court presided over a jury trial conducted under article 10 of the Mental Hygiene Law to determine whether respondent currently has a mental abnormality as defined by Mental Hygiene Law § 10.03 (i). On January 13, 2010, the jury returned a verdict that respondent did not have a mental abnormality.
On January 14, 2010, petitioner made an oral application for a motion schedule[1] to set aside the jury’s verdict. On February 16, 2010, petitioner filed a motion pursuant to CPLR 4404 (a) to set aside the verdict arguing it was against the weight of the evidence, and a new trial should be granted. On March 1, 2010, respondent filed a response in opposition.
This court finds that the jury verdict was against the weight of the evidence. However, for the reasons set forth below, the court lacks the authority under Mental Hygiene Law article 10 to set aside the verdict pursuant to CPLR 4404 (a).
Procedural History
In 1986, respondent was convicted of attempted sexual abuse in the first degree for an incident in which he exposed himself to a group of young boys, and also tried to disrobe two of them. Respondent was sentenced to five years’ probation.
*182 While on probation, respondent was arrested for sexually abusing boys to whom he taught karate. In 1991, respondent pleaded guilty to four counts of sodomy in the first degree and was sentenced to an indeterminate term of imprisonment of 8V4 to I6V2 years. Although the investigation revealed that respondent had sexually abused as many as 10 boys, the prosecution was based on the abuse of a 10-year-old boy forced to perform repeated acts of oral sex on respondent during breaks in karate lessons.
While in prison, respondent had disciplinary infractions for possession of publications containing depictions of naked children as well as materials and photographs from an organization created to promote sexual activity between adults and young boys.[2]
Shortly before respondent completed his term of imprisonment, petitioner filed a petition for civil management under Mental Hygiene Law article 10. In January 2010, this court conducted a jury trial pursuant to article 10 to determine whether respondent currently has a mental abnormality as defined in Mental Hygiene Law § 10.03 (i). On January 13, 2010, the jury returned a verdict that respondent did not have a mental abnormality. Petitioner now moves for an order, pursuant to CPLR 4404 (a), setting aside the verdict and granting a new trial on the ground that the verdict was contrary to the weight of the evidence.
Trial Evidence
Petitioner’s Case
1. Dr. Christopher Kunkle
Petitioner’s sole witness at the trial was Dr. Christopher Kunkle, a licensed psychologist, employed as a psychiatric examiner by the New York State Office of Mental Health. On March 10, 2009, Dr. Kunkle evaluated respondent pursuant to article 10. In preparation for his meeting with respondent, Dr. Kunkle reviewed voluminous records provided by the New York State Department of Correctional Services (DOCS), the New York State Division of Parole, the New York City Police Department, New York City Department of Probation, the Supreme Court, Bronx County, and the Central New York Psychiatric Center (CNYPC). His interview with respondent lasted approximately four hours.
*183 Based on his interview of respondent and review of the records, Dr. Kunkle provided detailed information about respondent’s background and criminal history. Dr. Kunkle testified about the numerous victims of respondent’s sexual behavior, and the level of deception respondent used to gain their trust. In 1986, respondent approached four boys, told them he was a karate instructor and urged them to sign up for his class. He engaged in a series of games with the boys with the goal of having them expose themselves and himself.[3] Respondent was convicted upon his guilty plea of attempted sexual abuse in the first degree and sentenced to five years’ probation. Besides exposing himself, respondent attempted to touch the penises of at least two of the boys.
In 1991, while on probation, respondent was arrested and subsequently pleaded guilty to sodomizing a boy whom he instructed in karate. The investigation in this case revealed that respondent had victimized as many as 10 additional boys. Respondent’s confession, at the time of his arrest, described the manner by which he gained the trust of his victims. He would engage the boys in different kinds of card and counting games to encourage them to expose their penises or buttocks. Respondent would induce them to touch his penis or allow respondent to touch them, or place their mouth on each others penises.
Besides these two cases for which respondent was prosecuted, respondent admitted to additional sexual acts with other children. In 1983, respondent lured a boy into a bathroom at a boys’ club. Respondent had the boy touch his penis and respondent put his penis against the boy’s anus. Respondent lured a second boy to a stairwell and attempted to engage in sexual acts by getting the boy to touch his penis.
In 1984, respondent admitted to luring three boys into what he called a makeshift clubhouse on a vacant lot. He engaged in sexual games and exposed his penis to the boys, at which time the boys fled.
In the opinion of Dr. Kunkle, offered with a reasonable degree of professional certainty, respondent suffers from a mental abnormality as defined in Mental Hygiene Law article 10. He believed that respondent has the mental disorder of pedophelia and has serious difficulty controlling his unlawful sexual *184 conduct against children. Dr. Kunkle testified about respondent’s protracted unwillingness to participate in any sex offender treatment program while in prison. When respondent first began to serve his prison sentence, he refused to participate in any treatment program. Five years later, in 1996, respondent again declined an opportunity to obtain treatment stating that he “didn’t need it.” Respondent eventually agreed to participate in a treatment program in prison but was removed from the program when he was found in possession of materials from NAMBLA depicting naked children. In 2005, respondent finally completed a sex offender program while in prison. Dr. Kunkle testified that respondent was a “high risk offender.” Dr. Kunkle was familiar with the program respondent completed and believed that it did not adequately meet respondent’s treatment needs. Dr. Kunkle stated that he questioned respondent to assess the results of the treatment program and concluded that the benefit was “marginal.”[4] Furthermore, the prison program was the equivalent of the initial or orientation phase of treatment currently provided at CNYPC, where respondent awaited trial.
Besides respondent’s limited exposure to sex offender treatment programs, Dr. Kunkle testified as to additional factors which led him to conclude that respondent had serious difficulty controlling his sexual behavior toward children. Specifically, Dr. Kunkle cited as reasons for this opinion: (1) the elaborate schemes he employed, such as the many games he organized in order to reduce the boys’ inhibitions and thus encourage them to engage in sex acts; (2) the numerous child victims over many years; (3) his reoffenses while on probation for identical conduct; and (4) his recent possession of pictures of naked children and other material from NAMBLA.
Respondent’s Case
1. Dr. Don Greif
Dr. Don Greif testified on behalf of respondent. Dr. Greif is a licensed psychologist retained both by New York State and by respondents to conduct evaluations of sex offenders pursuant to Mental Hygiene Law article 10.
Dr. Greif acknowledged that in every instance where he had been requested by New York State to perform an article 10 *185 evaluation, he had concluded that the person examined suffered from a mental abnormality. Further, in every instance where he had been requested by defense counsel to conduct such evaluations, he concluded that the person examined did not suffer from a mental abnormality.
In preparation for his interview of respondent, Dr. Greif reviewed numerous records provided by DOCS, including treatment records and documents prepared by respondent while in a treatment program, and at CNYPC. His interview with respondent was approximately 2[1]fe hours long.
Based upon his meeting with respondent and a review of his records, Dr. Greif concluded, with a reasonable degree of professional certainty, that respondent suffers from pedophelia. However, he believed that respondent no longer has serious difficulty controlling his unlawful sexual conduct against children. Dr. Greif testified that he believed that respondent is capable of controlling his sexual impulses because he acquired sufficient tools and resources through sex offender treatment programs, together with maturity and aging.[5] These factors, Dr. Greif felt, enable respondent to control his behavior.
Dr. Greif acknowledged that respondent had “cognitive distortions” regarding the capacity of children to consent to sex. Dr. Greif testified that respondent believed that a child could consent to having sex; once consent was given, respondent believed that sexual behavior with a child was mutual and acceptable. Dr. Greif asserted that such distorted thinking was the result of respondent being sexually active from a very young age. Furthermore, the treatment program assisted respondent in becoming increasingly aware of the harm he had caused his victims and that sex with children damaged them. Thus, according to Dr. Greif, sex offender treatment ameliorated the cognitive distortion that allowed respondent to commit sexual offenses against children.
2. Respondent
Respondent testified on his own behalf. While acknowledging that he had committed many sex offenses against children, he claimed that he “never had any urge” to offend. He asserted that now he could control his sexual behavior toward children because “behavior is a choice” and he had simply decided not to *186 reoffend. He claimed that after his 1991 conviction, he decided that he would change his behavior because he at last understood the harm he caused his victims. Furthermore, this was before he had entered into any sex offender treatment program.
Respondent stated that after completing a DOCS sex offender program, he possessed the tools necessary to avoid reoffending. Respondent said that he learned what might be a trigger and that he could just “turn himself off.” When respondent was asked if he still had a sexual orientation toward children, he stated that “I have a sexual orientation towards . . . young males being 22, 23, 24. I try very hard not to even consider thinking about kids.” When asked if he could change his behavior, respondent stated “that’s easy.” Therefore, respondent claimed that he did not need further treatment and would have no difficulty controlling his behavior because it was a “choice.” Respondent also acknowledged possessing photographs of naked children but claimed that it was because of his “interest ... in the nude and natural world”; similarly, he claimed that his unsuccessful effort to force DOCS to allow him continued access to NAMBLA materials was not based on any prurient interest on his part but because of the valuable information they contained for child sex offenders attempting to return to society after imprisonment.
Arguments
Petitioner moves for an order, pursuant to CPLR 4404 (a), setting aside the jury’s verdict and granting a new trial on the ground that the verdict is contrary to the weight of the evidence. Petitioner argues that the evidence presented at trial, overwhelmingly established that respondent has a mental abnormality, pedophelia, within the meaning of Mental Hygiene Law § 10.03 (i) and that respondent’s pedophelia results in his having serious difficulty controlling his unlawful conduct. Furthermore, although the jury found to the contrary, this court should exercise its authority to set aside that finding and order a new trial.
Petitioner relies on Nicastro v Park (113 AD2d 129 [2d Dept 1985]) to argue that the court has the inherent power to set aside a jury verdict and order a new trial when the court concludes that the verdict is against the weight of the evidence. Petitioner argues that if the court, after considering the totality of the evidence, concludes that the evidence supports more than one conclusion but overwhelmingly favors the conclusion rejected by the jury, the court should order a new trial (see *187 Matter of Robinson v Sanchez, 168 Misc 2d 546 [Sup Ct, Bronx County 1996]).
Petitioner relies on several Mental Hygiene Law articles 9 and 15 cases where courts have granted CPLR 4404 (a) motions (see Matter of Daniel XX., 53 AD3d 819 [3d Dept 2008]; Matter of Anonymous v Carmichael, 284 AD2d 182 [1st Dept 2001]) involving liberty interests equivalent to those asserted by respondent.
Respondent first argues that article 10 does not authorize this court to utilize CPLR 4404 (a) to set aside a jury’s verdict[6] of no mental abnormality. Furthermore, even if a CPLR 4404 (a) motion were authorized in these circumstances, the State’s motion should be denied because the jury’s verdict was not against the weight of the evidence. Respondent argues that this case required the jury to evaluate the credibility of two expert witnesses in deciding if respondent had serious difficulty controlling his unlawful conduct and that determination should not be disturbed.
Respondent points out that none of the cases relied on by petitioner involved an article 10 trial; further, none presented expert testimony on behalf of a respondent. In those cases, the juries found in favor of the patients despite the complete absence of supporting medical testimony. Respondent’s case was instead, a question of competing experts. Dr. Greif was a highly credentialed expert witness with more than 10 years’ experience in evaluating and treating sex offenders. The jury was entitled to credit Dr. Greif s opinion that respondent did not have a mental abnormality over the contrary opinion of Dr. Kunkle. Respondent relied on Cioffi v Lenox Hill Hosp. (287 AD2d 335 [1st Dept 2001] [verdict may not be set aside as against weight of evidence where fair interpretation of evidence supported jury verdict]).
Conclusions of Law
This court finds that the jury’s verdict was against the weight of the evidence. However, article 10 does not empower this court to set aside a jury’s verdict pursuant to CPLR 4404 (a) and order a new trial.
1. Jury’s Verdict was against the Weight of the Evidence
The evidence at trial clearly established that respondent has a mental disorder, pedophelia, and that he has serious dif *188 ficulty controlling his unlawful conduct. After considering the totality of the evidence, the court concludes that the verdict was not supported by the evidence.
Dr. Kunkle’s testimony regarding respondent’s long history of sex offenses against children, coupled with respondent’s limited exposure to sex offender treatment, the elaborate schemes he employed to engage boys in sexual contact, his continued reoffending while on probation for earlier sexual crimes against children, his cognitive distortions, and his lack of insight into his sexual urges and the difficulty he will face in controlling them are some of the factors that compel this court to conclude that petitioner has demonstrated by clear and convincing evidence that respondent has serious difficulty controlling his behavior.
Both Dr. Kunkle and Dr. Greif were in total agreement that pedophelia is a chronic condition. Further, they shared the opinion that sex offender treatment programs can teach offenders to develop the skills and tools they need to control such behavior. However, Dr. Kunkle testified about the extremely limited sex offender treatment respondent received while in prison. Respondent declined several opportunities for treatment while in prison. When respondent finally agreed to participate in a program, he was removed from the program when he was discovered to possess materials from NAMBLA depicting naked children. Respondent pleaded guilty in 1991 and went to prison, but did not complete even an initial offender program until 14 years later in 2005. Furthermore, Dr. Kunkle testified that he was familiar with the specific program and believed that it did not adequately meet respondent’s treatment needs as a high risk sex offender. Dr. Kunkle also testified that he felt that the benefit respondent derived from the treatment program he completed was marginal, and that respondent has not progressed beyond the orientation phase.
Dr. Greif testified that he believed that respondent had acquired sufficient tools through sex offender treatment, together with maturity from aging, to control his impulses against children. Dr. Greif reached this conclusion despite acknowledging that respondent was in treatment for nine months of a prison sentence which lasted nearly two decades. Dr. Greif described the program as “nine months of what’s considered cognitive behavioral treatment that involves relapse prevention being at the center of it . . . designed to change an *189 offender’s beliefs, attitudes, and behavior that increase the likelihood of sexual offending.” Dr. Greif also testified that before this treatment he would have concluded that respondent suffered from a mental abnormality within the meaning of article 10, and had serious difficulty controlling his unlawful sexual conduct. Dr. Greif concluded that this nine-month program equipped respondent with sufficient personal skills and resources to overcome the chronic impulses of his pedophelia that had dictated his entire adult life.
This court finds respondent’s testimony self-deluding, troubling and insincere. Respondent simplifies and grossly understates the chronic nature of his mental disorder by his assertion that he was going to control his sexual behavior merely by “deciding” not to reoffend. Respondent went on to say that he learned what might be a trigger and would just turn himself off. Respondent claimed that after his 1991 conviction, he decided he would change his behavior because he finally realized the harm he was causing his victims. This was before respondent entered into any sex offender treatment program. When respondent first began to serve his prison sentence, he refused to participate in any sex offender treatment program. Five years later, in 1996, respondent again declined an opportunity to obtain treatment stating that he “didn’t need it.” Respondent eventually agreed to participate in a treatment program in prison but was subsequently removed from the program when he was found in possession of materials from NAMBLA depicting naked children. Respondent also admitted being deceitful in his sex offender treatment to make himself seem more remorseful to his counselors. Respondent entered and completed sex offender treatment only in 2005.
This court finds the totality of the trial evidence overwhelmingly established that respondent has a mental abnormality in that he suffers from pedophelia, and has serious difficulty controlling his unlawful sexual conduct.
2. Article 10 Does Not Authorize this Court to Set Aside a Jury Verdict Pursuant to CPLR 4404 (a)
Pursuant to CPLR 4404 (a), petitioner moves to set aside the jury’s verdict on the ground that the verdict is contrary to the weight of the evidence. CPLR 4404 (a) states that
“upon the motion of any party . . . the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it *190 may order a new trial . . . where the verdict is contrary to the weight of the evidence.”
Mental Hygiene Law article 10 is silent with respect to whether a party may move to set aside a verdict or whether the court has the authority to grant such a motion pursuant to CPLR 4404 (a). Indeed, the Legislature did not expressly provide for such a mechanism when drafting article 10. While the drafters failed to incorporate CPLR 4404 within Mental Hygiene Law article 10, they did, however, incorporate numerous other provisions of the Civil Practice Law and Rules, as well as the Criminal Procedure Law, into article 10.
For instance, Mental Hygiene Law § 10.07, which deals with article 10 trials, expressly incorporates both the CPLR and CPL.[7] Mental Hygiene Law § 10.07 (b) states that the provisions of CPLR article 41 “shall apply to the formation and conduct of jury trial” conducted pursuant to article 10 except to the extent that it is inconsistent with CPL 270.05, 270.10, 270.15, 270.20, 270.25 (1) and 270.35 (1), in which case those provisions of the CPL shall govern. Mental Hygiene Law § 10.07 (b) further states that where the respondent waives his right to a jury trial, the court shall conduct a trial in accordance with article 42 of the CPLR.[8] Under Mental Hygiene Law § 10.07 (c), the provisions of Mental Hygiene Law § 10.08 (g) and CPLR article 45[9] “shall be applicable to [jury] trials conducted pursuant to this section.” Additionally, Mental Hygiene Law § 10.08 (g) states that written reports of psychiatric examiners shall be admissible as long as they are certified pursuant to CPLR 4518 (d).[10]
The drafters of article 10 also incorporated the CPLR when addressing the right to an appeal pursuant to article .10. Mental Hygiene Law § 10.13 (b) expressly states that the provisions of articles 55, 56 and 57 of the CPLR “shall govern appeals taken from orders entered pursuant to [article 10].” Mental Hygiene Law § 10.13 (b) further states that both the respondent and the Attorney General “may appeal . . . any final order” entered pursuant to article 10.
Based on the Legislature’s specific incorporation of various CPLR provisions throughout Mental Hygiene Law article 10, its *191 omission with respect to CPLR 4404 strongly suggests the intent not to incorporate it into the framework of the statute. Indeed, the Legislature specifically provided a mechanism by which the Attorney General could challenge an improper verdict he deemed unjust. Mental Hygiene Law § 10.13 (b) expressly provides that the Attorney General may appeal a final order dismissing a petition following a jury verdict in favor of respondent. Furthermore, the Attorney General may also seek a stay of an order ordering the release of respondent while appealing to the Appellate Division pursuant to section 10.13 (a). Thus, upon its enactment of Mental Hygiene Law § 10.13 (b), the Legislature specifically provided for a remedy by which the Attorney General may challenge a verdict. Since CPLR 4404 was not specifically incorporated within article 10 unlike articles 55, 56 and 57 of the CPLR which deal with the appellate process, it must be concluded that, based on its omission, article 10 does not authorize this court to set aside a jury verdict pursuant to CPLR 4404 (a).
Further, in the three years since Mental Hygiene Law article 10 was enacted (see L 2007, ch 7, § 1, eff Apr. 13, 2007) research has failed to disclose a single instance in which a trial court decided a motion to set aside a verdict in an article 10 proceeding — by petitioner or respondent. Accordingly, the lack of any appellate authority, upholding the application of the provision of the CPLR to an article 10 trial should come as no surprise. Further, appellate cases have held that where article 10 is silent and does not expressly permit the relief sought, the court cannot insert such language into the statute.
In Matter of Charles S. (60 AD3d 954, 955 [2d Dept 2009]), the Appellate Division held that while Mental Hygiene Law article 10
“sets forth various rules and procedures relating to court-ordered psychiatric evaluations conducted pursuant thereto, it is entirely silent as to whether the State may attend and/or videotape a court-ordered independent psychiatric evaluation and as to whether the State may videotape a court-ordered evaluation conducted by a psychiatric examiner of its choosing.”
Relying on Matter of Chemical Specialties Mfrs. Assn. v Jorling (85 NY2d 382, 394 [1995]), it held that a “court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see *192 fit to enact.” (Charles S., 60 AD3d at 955.) Since there was no provision in Mental Hygiene Law article 10 which expressly permitted the relief sought by the State, the court held that it will “not insert such language into the statute” (Charles S., 60 AD3d at 955).
Similarly, in Matter of State of New York v Bernard D. (61 AD3d 567 [1st Dept 2009]), the Appellate Division also held that because article 10 contains no express provision authorizing the State to videotape psychiatric examinations of sex offenders pursuant to Mental Hygiene Law § 10.06, the State was not entitled to do so. It concluded that the “Legislature intended that the courts not have the discretion to order” such videotaping (Bernard D., 61 AD3d at 567).
In light of the aforementioned cases, this court must strictly construe the language of Mental Hygiene Law article 10.[11] A “statute whose tendency is toward the restraint of the personal liberty of the individual is to be strictly construed in favor of the individual” (McKinney’s Cons Laws of NY, Book 1, Statutes § 314, Comment). While article 10 is a civil statute, it may act to restrain one’s liberty and, accordingly, should be strictly construed (Matter of State of New York v Rashid, 25 Misc 3d 318, 337 [Sup Ct, NY County 2009]).
Even assuming arguendo this court were to set aside the verdict as against the weight of the evidence, Mental Hygiene Law does not permit a new trial on such grounds. While CPLR 4404 (a) provides for a new trial where “the verdict is contrary to the weight of the evidence, in the interest of justice, or where the jury cannot agree after being kept together for as long as is deemed reasonable by the court,” Mental Hygiene Law § 10.07 (e), by contrast, expressly states that retrial is permissible only when the “jury is unable to render a unanimous verdict.” In view of the specificity of Mental Hygiene Law § 10.07, CPLR 4404 is clearly not applicable here. It is well settled that a prior general statute must yield to a “later specific or special statute” (see Matter of Dutchess County Dept. of Social Servs. v Day, 96 NY2d 149, 153 [2001], quoting Erie County Water Auth. v Kramer, 4 AD2d 545, 550 [1957]).
Furthermore, Mental Hygiene Law § 10.07 (e) specifically states that where the jury unanimously determines that respon *193 dent does not have a mental abnormality, the court must dismiss the petition and release respondent. Thus, the statutory language mandates release upon a verdict in respondent’s favor. By contrast, the CPLR states that the court can direct the clerk not to enter a verdict in favor of the prevailing party (CPLR 5016 [b]). Clearly, Mental Hygiene Law is more restrictive than the CPLR on this issue because article 10 proceedings, while civil in nature, echo criminal proceedings in a number of key respects (see Kansas v Hendricks, 521 US 346, 379 [1997] [“resemblances between (sex offender) ‘civil commitment’ and traditional (imprisonment) are obvious”]). Accordingly, the Legislature clearly afforded respondent numerous procedural safeguards in an article 10 proceeding which mirror those rights afforded to a defendant in a criminal proceeding (Matter of State of New York v Doe, 26 Misc 3d 962 [Sup Ct, Franklin County 2009]).
Indeed, Mental Hygiene Law article 10 expressly incorporates numerous provisions from the CPL such as the formation and conduct of the jury, as noted supra. As in a criminal trial, article 10 requires that the jury consist of 12 jurors and that a verdict must be unanimous. Furthermore, the language of Mental Hygiene Law § 10.07, requiring release of respondent following a verdict in his favor, closely resembles CPL 330.10, which requires the discharge of a criminal defendant from custody upon a jury’s acquittal.[12] Clearly, the Legislature expected the jury’s verdict in an article 10 proceeding to have the same effect as a unanimous verdict in a criminal case.
Therefore, this court must comply with the express language contained in Mental Hygiene Law § 10.07 (e), and dismiss the petition upon the jury’s unanimous verdict in favor of respondent. In the absence of an explicit provision permitting a new trial, this court must construe the statute in favor of respondent, since respondent’s liberty interests are at stake (see Statutes § 314).
Therefore, for the aforementioned reasons, this court finds that although the jury’s verdict was against the weight of the evidence, it does not have the power under article 10 to grant such a motion pursuant to CPLR 4404 (a).
*194 Accordingly, it is hereby ordered that petitioner’s article 10 petition is dismissed.[13]

. Petitioner’s request was not opposed by respondent who conceded that CPLR 4404 was applicable to trials held under Mental Hygiene Law article 10.

. The North American Man-Boy Love Association (NAMBLA).

. Dr. Kunkle testified that respondent would say things to the effect of “I’m a karate instructor, in order to be with me, I have five rules . . . show your dick, show your butt, do push-ups in the nude, jerk off and get hard.”

. Dr. Kunkle testified that respondent’s written assignments in the program contained graphic descriptions of sex with children. Dr. Kunkle stated that this pornographic detail suggested that respondent continued to fantasize about children and that he was unable to separate fantasy from reality.

. Dr. Greif testified that the likelihood of a sexual offender reoffending declined with age. Furthermore, the period when pedophiles were most likely to reoffend was between the ages of 25 and 35. Dr. Greif stated that respondent, at age 48, was less likely to reoffend than a younger pedophile.

. While respondent expressly conceded the applicability of this provision previously (see n 1), respondent’s memorandum of law repudiates the concession with no explanation for the change in position.

. There are also several instances where article 10 incorporates provisions of the CPL for definitional purposes such as in Mental Hygiene Law § 10.03 (g) (2) and § 10.07 (d).

. CPLR article 42 deals with trials by the court.

. CPLR article 45 deals with the evidentiary rules in civil jury trials.

. CPLR 4518 (d). deals with the admission of business records.

. (See also Matter of State of New York v Shawn X., 69 AD3d 165, 178 n 8 [3d Dept 2009]; Matter of State of New York v Rosado, 20 Misc 3d 468 [Sup Ct, Bronx County 2008].)

. As respondent points out, CPL article 440 only permits a defendant to file a motion to set aside a verdict in a criminal proceeding.

. After oral argument on April 6, 2010, the court granted respondent an order for release pursuant to Mental Hygiene Law § 10.07 (e).