OPINION OF THE COURT
Jerome J. Richards, J.
Petitioner seeks an order pursuant to CPL 330.20 (1) (o) extending for an additional five years the previous order of conditions of supervised release of respondent. The petition was filed on April 6, 2011, and is supported by an application and notice on official Form Q-l, a proposed order to extend an order of conditions on official Form N-l, clinical documentation including a physician’s affidavit, and an affidavit of service upon respondent, all submitted with a cover letter dated March 23, 2011 to the Division of Forensic Services in the New York State Office of Mental Health (OMH). This case arose from the fact that respondent was found not responsible for criminal charges due to mental illness, and consequently he was remanded by the Bombay Town Court on January 1, 1995 to the custody of the Commissioner of Mental Health for confinement pursuant to CPL 330.20 (2) or (6). On May 16, 2001 St. Lawrence County Court entered an order of conditions pursuant to CPL 330.20 (6) and/or (7). That order of conditions was extended by further order of St. Lawrence County Court on April 24, 2006, to expire on April 24, 2011. Respondent’s current status is that of an outpatient of the St. Lawrence Psychiatric Center, through which he participates in a structured family care program.
Petitioner asserts that respondent no longer has a dangerous mental disorder but is in need of continued supervision and treatment pursuant to an order of conditions. Petitioner further avers that the issuance of such an order is consistent with the public safety and welfare of the community and of the defendant.
After discussion between counsel, on May 5, 2011 the Assistant Attorney General submitted a revised proposed order of conditions. The revisions were described as adding detail from the historical record concerning respondent’s dangerousness, *416 and further providing what petitioner characterizes as more detailed mechanisms to assure compliance with the recommended treatment program.
The parties continue to disagree as to whether or not the extension order may or should contain the following provision:
“ORDERED that should the defendant fail to appear or comply with a psychiatric examination, as detailed above, the Commissioner, upon written communication from the Clinical Director of the OMH monitoring facility indicating that in his/her professional judgment the defendant’s current psychiatric condition or behavior evidences an emergence of risk likely to jeopardize the defendant’s or the public’s safety, shall apply to the court for a Temporary Confinement Order for the purpose of conducting an effective psychiatric examination in a secure facility.”
This language appears as the penultimate paragraph of the revised proposed order of conditions.
Respondent’s attorney also objects to the request for a five-year extension of the order, since the hospital forensic committee originally requested a three-year extension, although the Office of Mental Health has, as the petitioner, requested a five-year extension.
With respect to the temporary confinement order provision, respondent’s attorney notes that another judge of this court declined to include such a provision in a similar but unrelated case,[2] finding that although such a provision might possibly be authorized by CPL 330.20 (1) (o), the requested language did not adequately address what is meant by noncompliance, or indicate to whom the authority to make such a determination is granted. Moreover, that judge wrote, the scope of the temporary confinement order provision is not defined, and other statutory remedies are available under existing law.
In a supplemental affirmation dated June 30, 2011, respondent’s attorney states the view that (1) the temporary confinement provision is unconstitutional and that (2) the temporary confinement provision is not authorized by CPL 330.20. Counsel further asserts that this very issue is raised directly on appeal in two cases now pending in the Appellate Division, Second *417 Judicial Department, in Allen B. (case No. 2011-03471), and Robert T. (case No. 2011-03469). Insofar as this court can determine, those cases have not yet been decided.
Respondent’s attorney’s supplemental affirmation makes additional comments and requests, seeking to define more broadly the geographical area within which respondent would be free to travel without prior permission from the treatment team, and eliminating provisions which counsel feels are more appropriate to an assisted outpatient treatment order under Mental Hygiene Law § 9.60 (Kendra’s Law).
With respect to the temporary confinement provision, respondent’s counsel notes that the existing remedy within CPL 330.20 for a rehospitalization of a released but not discharged patient is a recommitment petition, as provided in CPL 330.20 (14). That procedure is detailed and requires a formal petition, service on the patient, notice, counsel, and a hearing. (See Matter of Henry L., 172 Misc 2d 981 [Franklin County Ct 1997].) The legal issue in a recommitment hearing is whether defendant presently suffers from a dangerous mental disorder (CPL 330.20 [14]). Until the court makes a finding of such a disorder, after a hearing, involuntary detention of the released patient is not permitted under the CPL 330.20 provisions except in the narrow situation where he or she fails to appear for the recommitment hearing. In that narrow circumstance the court is authorized to issue a warrant to bring respondent before the court. (See Matter of Oliver C. v Weissman, 203 AD2d 458 [2d Dept 1994].)
Respondent’s counsel further argues that the temporary confinement order provision would violate respondent’s due process liberty interest because CPL 330.20 (14) does not authorize such an order. As counsel notes, in Foucha v Louisiana (504 US 71, 80 [1992]), the Supreme Court reiterated its earlier language in Jones v United States (463 US 354, 361 [1983]) and Addington v Texas (441 US 418, 425 [1979]), that “commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.”
Respondent further argues that although CPL 330.20 (12) permits the court to tailor appropriate conditions in its order, it may not do so in a way which exceeds the grant of authority in the CPL 330.20 scheme. (See Matter of Oliver C. v Weissman, supra.) By analogy, respondent cites to Matter of State of New York v Mack (28 Misc 3d 180, 192 [Sup Ct, Bronx County 2010]), which in turn cites Matter of State of New York v Bernard D. (61 *418 AD3d 567 [1st Dept 2009]). That case held that since Mental Hygiene Law article 10 did not specifically authorize the State to videotape psychiatric examinations of sexual offenders, it did not have the discretion to do so. Mack also cited McKinney’s Consolidated Laws of NY, Book 1, Statutes § 314, which states that a statute restraining personal liberty is strictly construed. (Matter of Baker, 29 How Prac 485 [Sup Ct, NY County 1865].)
Under CPL 330.20 (12) an order of conditions shall contain any conditions that the court determines to be reasonably necessary or appropriate. These may include required periodic visits to a specified outpatient facility (see People v Stone, 73 NY2d 296, 299 [1989] [restrictions on a defendant’s alcohol consumption or place of residence]; see Matter of Jill ZZ., 83 NY2d 133 [1994], discussed in Matter of Oswald N., 87 NY2d 98, 102 [1995]). Oswald N. specifically noted that “[s]hould a defendant fail to comply with the treatment plan specified in the order of conditions and thereafter become dangerous to himself or others, the courts may, upon a hearing, recommit the defendant to a secure psychiatric hospital.” (87 NY2d 98, 102.) However, a recommitment, ordered after a hearing, is based on a finding that respondent presently suffers from a dangerous mental disorder (see CPL 330.20 [1] [c]), and not upon a violation of the order of conditions. It is therefore also proper for the order to be issued nunc pro tunc (Matter of Zamichow [New York State Commr. of Mental Health], 176 AD2d 807 [2d Dept 1991]; cf. Matter of Jill ZZ. at 139; Matter of Albert F., 5 AD3d 5, 14 [2d Dept 2004], lv denied 2 NY3d 708 [2004]).
In support of the requested order of conditions, petitioner through counsel states that it would agree to allow a temporary order of confinement to permit the psychiatric evaluation to be conducted in a nonsecure (civil) facility, rather than a secure facility. The primary reason for petitioner’s request that the order of conditions include a provision allowing for a temporary confinement order is that the only “enforcement recourse” available otherwise is the recommitment proceeding, which petitioner describes as a fairly drastic remedy in comparison. Petitioner asserts, but without citation or authority, that the temporary confinement order is a reasonable, narrowly tailored provision within the scope of the court’s authority under CPL 330.20 (14).
While the Assistant Attorney General asserts that the proposed order states the circumstances under which respon *419 dent would be required to submit to a psychiatric examination,[3] the draft order of conditions has several provisions relating to psychiatric examinations.
Condition (1) (a) of the third ordering paragraph provides that the defendant shall attend an outpatient mental health treatment program, which may include periodic psychiatric assessments or evaluations including medication reviews.
Condition (7) of the same ordering paragraph provides that “if deemed necessary, the defendant will submit to further psychiatric examination and interview by the staff of the monitoring OMH facility.”
The fourth ordering paragraph states that under circumstances relating to noncompliance with prescribed medications or the use of unauthorized or illegal drugs or alcoholic beverages, defendant “shall submit, at the discretion of his treating psychiatrist, to a psychiatric examination by a licensed psychiatrist of the monitoring OMH facility as designated by the Clinical Director.”
And lastly, the fifth proposed ordering paragraph provides for a temporary confinement order for the purpose of conducting an effective psychiatric examination in a secure facility upon written communication from the Clinical Director of the OMH monitoring facility indicating that in his/her professional judgment the defendant’s current psychiatric condition or behavior evidences an emergence of risk likely to jeopardize the defendant’s or the public’s safety.
It seems to the court that each of these provisions depends, ultimately, on the professional discretion and judgment of the Clinical Director or a psychiatrist involved with respondent’s treatment plan. While there is of course nothing wrong with such provisions as the basis for taking necessary action either to protect the public or to further the respondent’s treatment plan, such provisions also highlight the reason for the due process hearings: such judgments should be subject to due process review. That was the reason for the Legislature’s adoption of the Insanity Defense Reform Act of 1980 (L 1980, ch 548), which rewrote CPL 330.20 “in an effort to conform to constitutional standards and to provide a detailed regime for the treatment of those found not responsible of a crime by reason of mental disease or defect. (See, Matter of Torsney, 47 NY2d 667.)” (Matter of Tucker, 145 Misc 2d 1011, 1012-1013 [Sup Ct, Bronx County 1989].)
*420 Petitioner notes that several other provisions of the Mental Hygiene Law provide for temporary confinement of patients in emergency situations: section 9.37 [involuntary admission on certificate of a director of community services or his designee] and section 29.15 [discharge and conditional release of patients to the community], among others. And petitioner further cites Matter of K.L. (1 NY3d 362 [2004]), where the Court held that the explict statutory provisions in Kendra’s Law (Mental Hygiene Law § 9.60) allowing an order of temporary confinement to evaluate noncompliance with assisted outpatient treatment conditions did not violate respondent’s liberty interests because the duration of the confinement was limited to 72 hours. Petitioner argues that the existence of the these temporary confinement remedies in other provisions (and other types of proceeding) of the Mental Hygiene Law shows that the requested temporary confinement order here is neither novel nor inappropriate in the recommitment context.
It might just as readily be said that the very existence of these alternative provisions elsewhere in the Mental Hygiene Law obviates the need for a special provision in the context of the recommitment of an insanity acquittee. What seems most important to the court, however, is the fact that CPL 330.20 is a carefully integrated set of provisions, seemingly intended to be self-contained, and to cover all situations relating to rehospitalization of insanity acquittees. The court agrees with respondent’s counsel that CPL 330.20 does not authorize the temporary confinement order as proposed by petitioner. Such a provision would not be a mere reasonable additional condition, and it is therefore not authorized by CPL 330.20 (1) (o). The court fully appreciates the potential value of such a provision, if it were suitably limited and tailored to a particular respondent’s situation, but the court sees no present authority for adding such a condition.
The court will therefore approve an order extending nun pro tunc the previous order of conditions, as contained in the April 24, 2006 order, to expire on April 24, 2016. Counsel for petitioner is asked to submit such an order on the official form, as required. The portion of the present application seeking inclusion of a provision permitting an application for a temporary confinement order is denied.

. Matter of Donald C., unreported decision and order dated March 30, 2011, attached as exhibit B to the April 27, 2011 affidavit of Charles Bayer, Esq., in the present case.

. Assistant Attorney General’s letter brief, Aug. 12, 2011, at 2, 11 2.